**UNITED STATES of America, Appellee,**

v.

**John STAFFORD, Appellant.**

**No. 261, Docket 31839.**

United States Court of Appeals Second Circuit.

Argued Jan. 5, 1968.

Decided Jan. 29, 1968.

Herman Adlerstein, New York City, for appellant.

Michael Rosen, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., Jerome C. Ditore, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, FRIENDLY and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge:

In this case we are again [1] called upon to determine whether the claim of a purported conscientious objector has been given the consideration required by the Selective Service Act. Section 6(j) of the Selective Service Act, 50 U.S.C.App. § 456(j), provides in part:

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

There is no restriction in the Act itself on the time when this claim can be made—although it seems clear that it must be made before actual induction. Cf. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1943) (military law applies after induction). However, this otherwise unqualified right to claim exemption from combatant training has been limited by regulation. 32 C.F.R. § 1652.2 provides in pertinent part:

"The local board may reopen and reclassify anew the classification of the registrant * * * provided * * the classification shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in registrant's status resulting from circumstances over which the registrant had no control."

This regulation has been upheld by this court as a reasonable limitation on the

1. See United States v. Gearey, 368 F.2d 144 (2d Cir. 1966).

right to make a conscientious objector claim. United States v. Gearey, 368 F.2d at 149. The specific issue raised here is whether that regulation was correctly applied to the facts of this case.

Appellant registered with his Local Board in 1959 and was given a I–A (eligible for induction) classification. That classification was shortly changed to II–A (occupational deferment) which he effectively retained until September 7, 1966. On that date he was reclassified I–A and on September 19, 1966 appellant was ordered to report to the Fort Hamilton Induction Station on October 4, 1966 for induction into the armed forces. On October 4th, after initial processing at the Induction Center, appellant refused to submit to induction. Instead, he presented to the processing officer a letter signed by him which stated that he had a "deep moral conviction" which "has always been a deep part of me" against taking the life of another. He stated that he did not want to be responsible for another's death, and he offered to do "defense work" instead. This was the first indication of his conscientious objector views. Appellant had attempted to give this letter to his local board before proceeding to the Induction Center, but the office was closed at that hour of the morning.

The letter, handed by appellant to the induction officer, was never sent to the Local Board, but was instead forwarded to the United States Attorney's Office. The processing officer at the Induction Center notified someone in the Selective Service System, by telephone, that appellant had refused induction because he could not kill, but this claim was not presented in writing [2] and it is clear that his Local Board was not aware that he had made a written claim to conscientious objector status before he refused to go through with the actual induction ceremony and, therefore, it has not had an opportunity to consider the merits of such a claim.

After appellant had refused induction, he wrote to the Director of Selective Service for New York City, on October 18, 1966, requesting permission to file Form 150 for conscientious objectors. His letter (which was made part of his file) stated in part:

"It is perhaps an unfortunate way that I have that makes me act upon an issue only when I am directly confronted by them. [sic] When called for induction on October 4, 1966 I found my conscience compelling me to refuse to step forward and thus I did."

On October 24, 1966 the Director replied that further action on appellant's case must await the determination of the prosecuting United States Attorney, but that in the meantime appellant could obtain a Form 150 from his Local Board and have it included in his file. On November 25, 1966 appellant returned the completed form to the Local Board. It did not indicate when his beliefs matured.

Appellant also asked the Catholic Peace Fellowship to write his Local Board on his behalf. Its letter of November 22, 1966, asked the Board to reopen appellant's case and stated: "Mr. Stafford's objection, he tells us, is of long standing. He was simply unaware of his rights and therefore failed to act upon them." Finally, after being informed by the United States Attorney that he had filed his claim too late, appellant wrote to his Board on December 27, 1966, stating that he realized that it was his fault for not having filled out the proper form at the proper time, and requesting the Board to reconsider his case and give him a I–A–O or noncombatant classification. This disposition apparently would have satisfied the United States Attorney. The Board replied by letter of January 12, 1967 that "the Local Board has con-

---

**2.** A conscientious objector claim is required to be made in writing. 32 CFR § 1625.-2. The Induction Center sent appellant's local board a report of his refusal to submit to induction, but no reference was made to the reasons given by appellant for refusing.

sidered your case and has determined that it is unable to reopen your case." The Board's minutes for January 4, 1967 state:

| | *Vote* | |
|---|---|---|
| | Yes | No |
| "Local board is unable to reopen case because it finds there has been no change of status of the registrant resulting from circumstances over which the registrant had no control (as per selective service regulation 1625.2)" | | |
| LTT VE HED | 3 | 0 |
| "Registrant's letter received Dec. 27, 1966, has been noted wherein he indicates his own irresponsibility of not having filled out the form at the proper time." | | |
| LTT VE HED | 3 | 0 |

———◆———

■ This court has held that a conscientious objector claim can "mature" or "crystallize" after a registrant has received his Notice to Report for Induction, and that this may be a change in circumstances over which the registrant has no control within the meaning of regulation § 1652.2. United States v. Gearey, supra. In that case Gearey, after receiving an induction notice dated April 19, 1965 made a request for a student deferment. The Local Board postponed the date of induction to await corroboration of his attendance at college. On May 24, 1965, while still scheduled for induction, Gearey made a conscientious objector claim to his Local Board on Form 150. The Board informed him that it did not believe that he was a "genuine c. o." and that the facts did not warrant a change in his classification. This court held that a conscientious objector claim could mature after the notice had been mailed and vacated his conviction for refusing to submit to induction because it considered it possible that the Local Board had refused to reopen his case merely because Gearey had not advanced his claim before the mailing of the induction notice.

■ The government attempts to distinguish that case on the technical ground that a claim for conscientious objector status should be made to the Local Board and not to the officers at the In-

duction Center and that, having been made to the processing officer at the Induction Center, it was made too late. We are unable to accept such an analysis. Although appellant's claim should have been made to the Local Board, we do not think that a legally untutored registrant should be penalized for his failure to distinguish between the two agencies. See Simmons v. United States, 348 U.S. 397, 404, 75 S.Ct. 397, 401, 99 L.Ed. 453 (1955) ("Registrants are not to be treated as though they were engaged in formal litigation assisted by counsel."); United States v. Greene, 220 F.2d 792, 794 (7th Cir. 1955). Furthermore, in Billings v. Truesdell, 321 U.S. 542, 547, 64 S.Ct. 737, 741, 88 L.Ed. 917 (1943) the Supreme Court pointed out that "the Selective Service System is designed to operate 'as one continuous process for the selection of men for national service'—a process in which the civil and military agencies perform integrated functions. The examination of men at induction centers and their acceptance or rejection are parts of that process. Induction marks its end. But prior to that time a selectee is still subject to the Act and not yet a soldier. A case involving his rights or duties as a selectee prior to that event is a case arising under the Act."

The Induction Center, since it is acting in conjunction with the Selective Service

System prior to a registrant's actual induction, should therefore have forwarded appellant's letter to his Local Board rather than to the United States Attorney. Since it did not, the Local Board could not have realized that appellant had made a pre-induction request for consideration of his conscientious objector claim. The District Court's opinion states that "his claim to exemption as a conscientious objector, made during the post-induction period when his refusal already constituted him an offender, was received by his Local Board only for the purposes of determining whether it should reopen consideration of the question of his classification (I–A) and having been thus narrowly received, the Board denied the reopening applied for."

The court thus based its opinion on the hypothesis that appellant's refusal "already constituted him an offender." This status could exist only after the Board had an opportunity to consider the conscientious objector claim made for the first time in the letter—which it had not done. The Court also apparently believed that the only question before the Board was to "reopen consideration" of his classification in the light of this assumed "offender" status. This view is fortified by the court's assumption that appellant's claim was "narrowly received" and that the denial of the "reopening" by the Board was within these narrow confines.

It would thus appear that appellant may have been prejudiced because the Board was under the erroneous impression that it was considering a claim made for the first time after appellant had refused induction. Since the Local Board never had an opportunity to pass upon appellant's claim in its proper posture, it is but fair to the Board and to appellant to give them that opportunity.

Although the Board did state after the "reopening" request was made that it found no change in the status of the registrant resulting from circumstances over which the registrant had no control, it also stated that appellant by his own letter indicated "his own irresponsibility of not having filled out the form at the proper time." It is thus not clear whether the Board based its decision upon failure to file a timely notice, upon a finding that he was not a conscientious objector, or upon an earlier maturity of his conscientious objector beliefs resulting in no change of status from circumstances over which appellant had no control.

■ As indicated in *Gearey,* our belief that "a strong Congressional policy to afford meticulous protection to applicants who claim to be conscientious objectors" impels us to follow the procedure there adopted. Hence, we do not dismiss the indictment but remand to the trial judge to ascertain if the Local Board determined that appellant's claim had matured before the induction notice was sent (Reg. § 1625.2), or that appellant was not entitled to conscientious objector status because he had never been a conscientious objector, and if the District Court is of the opinion that there is a rational basis for such findings, the conviction must stand in light of appellant's stipulation that he knowingly refused to submit to induction. On the other hand, if he determines that the Local Board rejected appellant's claim on the theory that it was untimely because not made before his appearance at the Induction Station and that the Local Board did not rest its decision on a sufficient alternative ground, the indictment must be dismissed. Such dismissal, of course, would not preclude a new prosecution if the Local Board, on further consideration free of any taint stemming from supposed untimeliness of Stafford's claim, should render an adverse decision on either of the grounds indicated, and he should again refuse to submit to induction.

Remanded for proceedings not inconsistent with this opinion.