**UNITED STATES of America, Plaintiff,**

v.

**Keith Isaac HINCH, Defendant.**

**No. 22604.**

United States District Court
W. D. Missouri, W. D.

Nov. 6, 1968.

Calvin K. Hamilton, U. S. Dist. Atty., John L. Kapnistos, Asst. U. S. Dist. Atty., Kansas City, Mo., for plaintiff.

Stanley D. Rostov, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

Defendant was indicted for failure to comply with an order of his Selective Service Board No. 50, Kansas City, Jackson County, Missouri, to submit to induction into the Armed Forces in alleged violation of Section 462(a), Title 50—Appendix, United States Code. Defendant waived trial by jury pursuant to Rule 23(a) of the Rules of Criminal Procedure and his case was accordingly tried before the Court.

We have this day found the defendant to be not guilty. Although no specific request for special findings was requested pursuant to Rule 23(c), we deem it appropriate to file this memorandum opinion in which our findings of fact and conclusions of law are stated.

The narrow question upon which this case turns is whether a local selective service board may, under 32 C.F.R. § 1625.2, refuse to reopen a registrant's classification and thereby refuse to consider on the merits a registrant's conscientious objector claim made pursuant to Section 6(j) of the Selective Service Act, 50 U.S.C. App. § 456(j), on the sole ground that such claim was made subsequent to an order to report for induction. Because we conclude that a local board may not lawfully do so, we need not and therefore do not reach defendant's second contention which concerns the residence of all members of the local board here involved.

The facts are not in dispute. The government concedes that the findings of facts suggested by the defendant are supported by the record and the defendant makes a like concession in regard to the findings suggested by the government. Defendant was classified 1–A on March 22, 1967. On December 22, 1967 he was ordered to report for induction on January 11, 1968. On January 8, 1968, however, defendant requested and received Form 150 for conscientious objectors. Defendant did not return that form to the local board until after he had refused induction.

When the defendant's 150 Form was eventually filed, the local board entered a minute on March 26, 1968, stating that "Form 150 reviewed by board—information presented not deemed to warrant a classification of I-O. Not reopened under 1625.4, S.S. regs." The local board refused to reopen defendant's classification a second time on May 24, 1968 after it had received and reviewed a letter from Dr. John Swomley, Jr., of the St. Paul School of Theology (Methodist), who expressed his judgment that defendant was "a sincere conscientious objector."[1]

Subsequent processing by Selective Service makes it clear that Local Board 50 never considered defendant's conscientious objector claim on the merits and that it believed it was not required to do so by law. A letter from Captain Kenneth S. Goodrich, Chief of the Manpower Division of the Selective Service System's National Headquarters in Washington, to General Adams, the Missouri State Director of Selective Service, dated July 5, 1968 stated that the merits of defendant's claim for conscientious objector classification need not ever be considered by Local Board 50 because the defendant "did not ask for the SSS Form 150 until January 8, 1968, after he had been mailed an order to report for induction."

Captain Goodrich concluded that his review of the entire file disclosed "no serious defects in the selective service processing" of the defendant and that "the local board was proper in refusing to reopen his classification under Section 1625.2 of the regulations on March 27, 1968."[2]

The view we take of this case makes it unnecessary for us to reach the question presented by the undisputed fact that none of the members of Local Board 50 meet the residence requirements of Section 1604.52(c) of the Selective Service Regulations as amended in 1967. That new section of the regulations provides in part:

> The members of local boards shall be citizens of the United States who shall be residents of the county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction. No member of a local board shall be a member of the armed forces or any reserve component thereof. Members of local boards shall be at least 30 years of age.

The former regulation merely provided that the board members "preferably should be residents of the area for which their board is appointed and, in any event, shall be residents of the county

---

1. That letter, dated April 29, 1968, was addressed to Lt. Colonel D. M. Wilson, Deputy State Director of the Selective Service System, but was forwarded by him to Local Board 50. Colonel Wilson advised Dr. Swomley that he was forwarding his letter to Local Board 50 "in order that the local board may have your letter as a basis of classification action, if they are so moved to act * * *." Local Board 50 was not "moved to act" by Colonel Wilson's letter.

   We do not believe it legally significant that the letter reached the local board in the manner stated. Simmons v. United States, 348 U.S. 397, 404, 75 S.Ct. 397, 401, 99 L.Ed. 453, commands that "registrants are not to be treated as though they were engaged in formal litigation assisted by counsel." Indeed, 32 C.F.R. § 1624.1 provides that "no registrant may

   be represented before the local board by anyone acting as attorney or legal counsel." It is clear that we must look to substance rather than form when neither the local board nor the registrant have the benefit of guidance by legal counsel.

2. It should be noted that Captain Goodrich based his approval of Local Board 50's action in refusing to reopen on Section 1625.2 and not on Section 1625.4, the regulation cited by Local Board 50 in connection with its first refusal to reopen. It is obvious that the local board's refusal to reopen could not be justified under Section 1625.4 because if the statements in defendant's Form 150 were in fact true he would have been entitled to a I-O classification. Cf. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

in which their local board has jurisdiction."

The government set forth in a post-trial brief, but did not adduce in evidence, the obvious general qualifications of the present members of Local Board 50. But it is undisputed that no member of the board, including one appointed since the new regulation was promulgated, is a resident of the geographical area over which the board exercises jurisdiction.

Of greater importance, the government did not offer any evidence whatever as to why it was not "practicable" to appoint a resident within the meaning of the presently applicable regulation. Reasons for such failure may in fact exist but the government did not attempt to introduce any evidence in that regard even after the question had been placed in issue at the trial of this case. While it is not necessary to rule the question presented in this case, we believe it appropriate to suggest that the government must understand that in cases in which the question is appropriately raised by a defendant, as it was in this case, the burden of proving that it was not practicable to appoint residents rests upon the government.

We do not intimate that the defendant in this case would have been entitled to an acquittal because of the government's failure to meet that burden in this case. We do suggest that the evidence upon which some future decision will be based cannot be incorporated into the record by way of a posttrial brief.

Defendant must be acquitted in this case because 32 C.F.R. § 1652.2 was applied in a manner inconsistent with the intent of Congress as stated in Section 6(j) of the Selective Service Act 50 U.S.C. App. § 456(j). Neither the record of the Selective Service proceedings nor any independent evidence ad-

duced at trial so much as suggested that Local Board 50 ever made appropriate inquiry into the merits of the controlling factual questions of whether defendant's claimed change of status resulted "from circumstances over which the registrant had no control," within the meaning of 32 C.F.R. § 1625.2, or into the sincerity of defendant's claim of conscientious objection.[3]

Section 6(j) of the Selective Service Act, 50 U.S.C. App. § 456(j), provides in part:

> (j) Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.

32 C.F.R. § 1652.2 provides in its pertinent part:

> The local board may reopen and consider anew the classification of a registrant * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

The Court of Appeals for the Second Circuit in United States v. Stafford, (2 Cir. 1968) 389 F.2d 215, recently applied the principles stated in United States v. Gearey, (2 Cir. 1966) 368 F.2d 144, cert. den. 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed. 2d 368, reh. den. 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611(1967), to a factual situation quite comparable to that presented by the undisputed facts of this case.

---

3. The duty and responsibilities that rest on a local board in regard to claims of conscientious objection are much greater under the 1967 amendments to the Selective Service Act than before. See

Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 U. of Chi.L.Rev. 686 (Summer, 1968).

The defendant's claim of conscientious objection involved in *Stafford* came at an even later point of time than did defendant's claim in this case. In *Stafford* the defendant was ordered to report for induction on October 4, 1966. He reported to the Induction Center on that day but, after initial processing, refused to submit to induction. Instead, he "presented to the processing officer a letter signed by him which stated he had a 'deep moral conviction' which 'has always been a deep part of me' against taking the life of another." There was no dispute about the fact that "this was the first indication of his conscientious objector views."

Defendant Stafford's letter was never even sent to his local board; it was forwarded to the United States Attorney's office. After he had refused induction, however, he eventually obtained and filed a Form 150 for conscientious objectors with his local board. In his completed Form 150 Stafford, as defendant in this case, "did not indicate when his beliefs matured." The local board in *Stafford*, as did the local board in this case, refused to reopen the registrant's classification.

Stafford was indicted and convicted. The Court of Appeals remanded the case stating that "this court has held that a conscientious objector claim can 'mature' or 'crystallize' after a registrant has received his Notice to Report for Induction, and that this may be a change in circumstances over which the registrant has no control within the meaning of regulation § 1625.2."

That court pointed out that it had held in United States v. Gearey, supra, that "a conscientious objector claim could mature after the notice had been mailed and vacated his conviction for refusing to submit to induction because it considered it possible that the Local Board had refused to reopen his case merely because Gearey had not advanced his claim before the mailing of the induction notice." Stafford's conviction was set aside in order to permit the district court to ascertain "whether the Board based its decision upon failure to file a timely notice, upon a finding that he was not a conscientious objector, or upon an earlier maturity of his conscientious objector beliefs resulting in no change of status from circumstances over which appellant had no control."

*Stafford* held that if the district court found as a fact that "the Local Board rejected appellant's claim on the theory that it was untimely because not made before his appearance at the Induction Station and that the Local Board did not rest its decision on a sufficient alternative ground, the indictment must be dismissed." That court pointed out that:

Such dismissal, of course, would not preclude a new prosecution if the Local Board, on further consideration free of any taint stemming from supposed untimeliness of Stafford's claim, should render an adverse decision on either of the grounds indicated, and he should again refuse to submit to induction. [389 F.2d at 219]

It is quite apparent that Local Board 50 twice refused to consider the merits of defendant's claim of conscientious objection and that such refusals were based on the theory that such claim was untimely made. It is likewise clear that Local Board 50 did not consider or make a finding on the merits that defendant was not in fact a sincere conscientious objector. Nor did it find on the merits that defendant's convictions in that regard resulted in no change of status from circumstances over which defendant had no control. Nor was there any basis in fact in defendant's Selective Service file upon which the local board could have made those findings within the principles stated in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). Cf. United States v. Stidham, (W.D.Mo. 1965) 248 F.Supp. 822. In that connection we assume that appropriate attention will be paid to the revision of Form 150 announced by the Director of Selective Service on September 5, 1968, and to the new classification procedures

announced by Colonel Daniel Omer, Deputy Director and General Counsel of the Selective Service System, announced at approximately the same time. Colonel Omer has stated that the new procedures are designed to insure that a registrant is afforded the opportunity of a personal appearance before his local board to fully present his claim for exemption as a conscientious objector. We would assume that any registrant whose exemption has been denied would file a written request within 30 days after his local board has mailed a notice of classification in accordance with 32 C.F.R. § 1624.1 in order that his local board be appropriately notified of his desire for a hearing.

We are cognizant of the division of authority among the various Courts of Appeal in connection with the basic question presented in this case. The cases are collected in Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, supra, at 696, et seq.

The rule announced and applied by the Second Circuit in *Gearey* and *Stafford,* however, was applied prior to its adoption in the Second Circuit and is apparently being followed by district courts throughout the country in the most recent cases in situations where such courts are free to do so. See, for examples, United States v. Crawford, (N.D.Cal.1954) 119 F.Supp. 729; United States v. Underwood, (E.D.Pa.1955) 151 F.Supp. 874; United States v. Federspiel, (N.D.Ohio 1968) No. Cr. 67–240 1 Sel.Serv.L.R. 3042; United States v. Skinner, (D.N.H.1968) Cr. No. 6862 1 Sel.Serv.L.R. 3042; and United

States v. Blaisdell, (D.Me.1968), 294 F. Supp. 1303.

See also Ehlert v. United States, (9 Cir. 1968) No. 21930, decided September 11, 1968, but not yet reported, in which the Court of Appeals for the Ninth Circuit expressly followed the rule of the Second Circuit and refused to follow cases such as United States v. Schoebel, (7 Cir. 1953) 201 F.2d 31, holding that "crystalization of a conscientious objection occurring after notice of induction can constitute a change over which the registrant had no control, justifying reopening of classification under § 1625.2."

The Court of Appeals for the Eighth Circuit has not decided the question presented in this case. It has, however, directed close attention to agency regulations which have been construed to narrow the scope of a Congressional enactment. [See and compare Marion v. Gardner, (8 Cir. 1966) 359 F.2d 175.]

The late Judge J. Spencer Bell stated in his dissent in United States v. Beaver, (4 Cir. 1962) 309 F.2d 273 at 278, that he would "leave to the theologians the intriguing conclusion of both the Board and the Court that the registrant's change of status did not result from circumstances over which the registrant had no control." That comment puts in focus our universal experience that no general rule can fairly be established in regard to the time a particular individual may find himself compelled to act by his own conscience.[4] Judge Kaufman appropriately noted in *Gearey* that "the Defense Department has recognized that a genuine claim of conscientious objection may arise even *after induction"* (368 F.2d at 149–150, footnote 10, his

4. William James pointed out long ago in The Varieties of Religious Experience the classic cases of instantaneous conversion that run throughout theological history. St. Paul's was perhaps the most eminent. Other examples are cited such as Tolstoy, John Bunyan, and Henry Alline in Lectures IX and X of James' famous classic. Indeed, those familiar with Methodist history are familiar with John Wesley's statement near his death that he could not "but believe that sanctification is commonly, if not always, an instantaneous work." We do not suggest that either courts or local boards usurp the functions of the theologians. We believe, however, that § 1625.2 is on sound ground when it requires a local board to make specific inquiry on a case by case basis to fairly determine whether a registrant's belated conversion of conscientious objection to war in any form did or did not result from circumstances over which the registrant had no control.

emphasis). He also suggested that "the realization that induction is pending, and that he may soon be asked to take another's life, may cause a young man finally to crystallize and articulate his once vague sentiments."

The hypothetical situation stated in *Gearey* was then presented as an actual case in *Stafford*. The latter case presented a situation in which the registrant wrote the State Director of Selective Service that "it is perhaps an unfortunate way that I have that makes me act upon an issue only when I am directly confronted * * *. When called for induction on October 4, 1966, I found my conscience compelling me to refuse to step forward and thus I did." That recitation is quite comparable to the multiple examples of religious conversion cited by William James.

We have stated the reasons that require defendant's acquittal. It is therefore

Ordered that the Clerk file the general finding of not guilty together with this memorandum and order. It is further

Ordered that defendant be discharged.