**William Ward EHLERT, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21930.**

United States Court of Appeals,
Ninth Circuit.

Feb. 2, 1970.

Certiorari Granted May 4, 1970.
See 90 S.Ct. 1525.

Arthur Wells, Jr. (argued), Berkeley, Cal., for appellant.

Paul G. Sloan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, CARTER, HUFSTEDLER, WRIGHT, KILKENNY and TRASK, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant, on June 14, 1964, was ordered to report for induction and thereafter sought to reopen his classification in order to establish his status as a conscientious objector. Subsequently, he was convicted of failing to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462.

Selective Service Regulations, 32 C.F.R. § 1625.2, in pertinent part, provide:

"The classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

In refusing to reopen his classification, the local board advised appellant that its action was based upon its determination that "the information submitted on SSS form 150 was not a change in your status which was beyond your control."

The district court, in denying motion for acquittal, ruled as a matter of law that changes in status involving conscientious objection were not beyond the control of the registrant. That ruling is here asserted as error.

Whether the crystallization of a conscientious objection to war can constitute a circumstance over which the registrant has no control is a question upon which the circuits have disagreed. Upon the affirmative side, among others, are United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968), cert. denied 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); United States v. Gearey, 368 F.2d 144 (2d Cir. 1966), cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), rehearing denied 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967), and Keene v. United States, 266 F.2d 378 (10th Cir. 1959). Upon the negative side, among others, are United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953), with approving dicta in Davis v. United States, 374 F.2d 1 (5th Cir. 1967); United States v. Jennison, 402 F.2d 51 (6th Cir. 1968), cert. denied 394 U.S.

912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); United States v. Helm, 386 F. 2d 434 (4th Cir. 1967), cert. denied 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968), and United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966).

This court has never definitively ruled upon the question. In two cases relied upon by the district court, language suggests our alignment with *Schoebel*. Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); Boyd v. United States, 269 F.2d 607 (9th Cir. 1959). In Dugdale v. United States, 389 F.2d 482 (9th Cir. 1968), the difference between *Gearey* and the language in *Boyd* and *Parrott* was noted and the choice of rule was expressly reserved. Briggs v. United States, 397 F.2d 370 (9th Cir. 1968) and Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968) also distinguish *Gearey*. At first glance, Boswell v. United States, 390 F.2d 181 (9th Cir. 1968), would seem to support appellant's views. While some of the language there employed points in that direction, a close analysis reveals that the precise point here presented was not there in issue. To the extent, if any, that *Boswell* may be in conflict with our views herein expressed, it is overruled.

■ The statutory authorization for 32 C.F.R. § 1625.2 is found in 50 U.S.C. App. § 460, which provides, among other things, that the President may "prescribe the necessary rules and regulations to carry out the provisions of this title." All of the authorities agree that the regulation is within the perimeter of the grant of power. Moreover, it is conceded that registrants, eligible for the draft, should not be permitted, without limitation, to challenge their status. Without such a regulation, the manpower quotas of Selective Service could not be met with any degree of certainty. An orderly administration of the Selective Service System requires such a regulation. Appellant does not really challenge the reasonableness of the regulation, nor its application to one whose conscientious objection matures prior to the notice to report. He urges that his views on the subject "crystallized" after he received the notice, and that we should follow the lead of *Sandbank, Gearey, Keene* and other similar cases.

Presumptively, every human is a rational being, having a free will and in complete charge of his own thinking. Section 1625.2, with one exception, was enacted for the specific purpose of putting to an end the function of the Selective Service System once a registrant had received his notice to report. The mentioned exception being those cases where the registrant is in a position to furnish the Board with objective evidence entitling him, *prima facie*, to a change of status by reason of circumstances beyond his control. True enough, the regulation does create a brief period during which a registrant is not eligible to present a claim of conscientious objection. This result, in our opinion, does not invalidate the regulation. The logic behind requiring a person troubled with conscientious objection to state his claim before receipt of the notice to report is extremely practicable. A Board can readily ascertain the validity of an "extreme hardship",[1] "sole surviving son",[2] and other such claims and can dispose of them, without difficulty, one way or the other, prior to the reporting date. The exact opposite is true of a claim of exemption based on conscientious objection. An adjudication on the sincerity of a registrant's conscientious objection requires an exploration in depth into his past and present family, religious and vocational life. After such an adjudication, if we followed *Gearey* and similar authorities, it would then be necessary to make the additional adjudication on when there was a crystallization or maturing of the registrant's views. No such procedure is contemplated by the regulation under scrutiny.

1. 32 C.F.R. § 1622.30(b).

2. 32 C.F.R. § 1622.40(a) (10).

We conclude that a crystallization of, or a change in, a registrant's views on conscientious objection is not a change in his status resulting from circumstances over which he has no control, within the meaning of 32 C.F.R. § 1625.2. The judgment of the lower court is affirmed.

DUNIWAY, Circuit Judge (concurring).

I concur. I do not think that the claimed "crystallization" of conscientious objection can be said to be "a change in * * * status *resulting from circumstances* over which the registrant has no control." (Emphasis added.) The word "circumstances" indicates to me some fact, act or event external to the mind or consciousness of the registrant, rather than the mysterious and unfathomable internal mental and spiritual processes of the registrant himself. Whether those processes are beyond the registrant's control I leave to the philosophers among us. I think that, whatever the answer to that question may be, they are not *circumstances* beyond his control.

Dictionary definitions tend to confirm this view. Funk & Wagnall's New Standard Dictionary defines "circumstances" as "1. Something existing or occurring incidental to *some other act or event*; a *related or concomitant act or thing.*" (Emphasis added.) Webster's New International Dictionary, 2d ed., defines the word as "1. One of the *conditions under which an act or event takes place* or with respect to which a fact is determined; a *condition, fact or event accompanying, or determining* the occurrence of *another fact or event.*" (Emphasis added.)

The practical considerations mentioned by my brother Kilkenny strongly reenforce these views. The regulation should be construed in a manner consistent with those considerations.

BARNES, and JAMES M. CARTER, Circuit Judges, concur in the foregoing concurring opinion.

ELY, Circuit Judge (concurring):

I concur in the majority opinion, and I also endorse the logical analysis expressed by my Brother Duniway. At the same time, I believe that additional factors should be recorded.

We took this case *en banc* for the purpose of considering and resolving the one important problem which the principal opinion attacks, and I am glad that our court has now supplied desired guidance on that issue. My examination of the record convinces me, however, that insofar as this particular appeal is concerned, we may have indulged ourselves in a great deal of unnecessary intellectual exercise. The contents of Ehlert's Selective Service file lead me to believe that there was no alternative to the affirmance of Ehlert's conviction even had the majority adopted the position taken by my Brother Merrill.

The sole question before the District Court was whether Ehlert's local board erred in refusing to reopen Ehlert's classification. Under the applicable Regulation (32 C.F.R. § 1625.2), all recognize that the board was disempowered to reopen the classification without expressly finding that there was a change in Ehlert's status resulting from circumstances over which he had no control. In determining whether or not it could make that finding, the board could, of course, look only to that which Ehlert himself submitted in support of his belated claim for conscientious objector status.[1] Even in cases not involving an

[1] This was conceded in the District Court. The trial judge recognized that there was no triable issue of fact and that his scope of review was confined to the determination of whether the contents of Ehlert's Selective Service file disclosed the

absence of any basis in fact for the board's refusal to reopen the classification. In this connection, Judge Zirpoli commented that "the very maximum you can go by is whatever was before the Board."

alleged change in status after receipt of the induction notice, the registrant must "clearly establish" his right to an exemption or deferred status. Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); Badger v. United States, 322 F. 2d 902, 906 (9th Cir. 1963).

Ehlert set forth his representations, after he received his notice to report for induction, in the standard Selective Service Form SSS 150. As I interpret those representations, none of them supplied the barest basis, even vestigial, upon which the local board could have supported a finding either that Ehlert claimed to be opposed conscientiously to war in any form or that his alleged beliefs crystalized after his receipt of his notice to report for induction. The board would be required to make the determination whether Ehlert's representations would support the required finding, and we must presume the regularity of the board's proceedings. Oestereich v. Selective Service Local Bd. No. 11, 393 U.S. 233, 241, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring); Bishop v. United States, 412 F.2d 1064, 1067 (9th Cir. 1969).

The threshold question of whether Ehlert claimed to be opposed conscientiously to war in any form focuses our attention on his statements that "I believe that service in the armed forces of *this country at this time* is work toward the end of the destruction of the human race," and "the sole purpose of military service in *this country today* is preparation for a nuclear orgasm which would be totally destructive of human life and values." (Emphasis supplied.) He also stated that he did not believe in a Supreme Being, and that he had no "religious" convictions. Furthermore, he did not claim to be driven by any moral or philosophical code that could be equated with "religion" within the meaning of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

In addition to his failure to state a prima facie claim of conscientious objection, Ehlert also failed to present any facts that would have justified a finding

that he had undergone a "change in status," i.e., he did not present a claim that his beliefs had crystalized after receipt of his induction notice. In answer to the inquiry as to "when * * * you received the training and acquired the belief which is the basis of your claim * * *," Ehlert replied, "The time period is from September, 1960, to the present. The source and the method have been the intellectual atmosphere of the University of California and its surroundings and the natural workings of an eager-to-know and questioning mind." In a letter to his local board Ehlert stated that he had been "unable to make a decision of such moment until faced with the absolute necessity to do so. Since the receipt of my induction notice, I have begun to be more fully aware of the implications of military service at this time." This latter statement constitutes the only semblance of a claim that a new belief was reached after the induction notice, and it formed the basis for the argument at trial. District Judge Zirpoli expressed, as one of his then thoughts, the opinion that this language should be interpreted to mean that Ehlert had long been aware of his beliefs but had simply been unable to decide whether to claim the status to which he felt entitled. At least, the board was warranted in interpreting the letter in this fashion and there was abundant basis in fact to support that interpretation. See Blades v. United States, 407 F.2d 1397 (9th Cir. 1969). Judge Zirpoli observed that a basis in fact for this interpretation existed by reason of the long period of the development of Ehlert's attitude coupled with the late filing of the claim. Surely, too, the board was entitled to infer that Ehlert himself believed that he had undergone no change in status. When Ehlert presented his new claim, he wrote, "I realize that I no longer have the legal right to apply for the status of conscientious objector * * *."

In his footnote 1, my Brother Merrill remarks, "The points raised in Judge Ely's concurring opinion were not

reached by the District Court. * * * Before the District Court the appellant asserted that the local board's decision not to reopen was based solely on the ground that his change in status was not beyond his control. The District Court dealt with the case in a manner consistent with this position." I cannot accept this conclusion. The judgment of conviction itself does not, of course, contain specific reasoning or include any explanation by the District Court for the ultimate determination of guilt. During the oral argument of counsel, there were numerous Socratic exchanges in which the learned trial judge clearly indicated his consideration of separate legal approaches. It is true that in the final exchange, the court made a comment which supports a portion of the minority's footnote 1. During the argument, however, the Government's attorney strenuously contended, and I believe correctly, that there was no factual basis upon which the board could have found a change in status. On this, in the extended colloquy, the District Judge commented, "They [the board] were not obligated to reopen." I think it is obvious, therefore, that the District Court did in fact consider, as it was obligated to consider, the problem to which my comments are directed. It is not unusual for a court, during an analytical exchange, to express thoughts that it may not, in the end, retain; consequently, I believe that we should not cull a judge's off-hand oral comments from the record and employ only some of them in order to conclude definitively that the trial court's ultimate conclusion was based solely upon only a portion of his comments.

The minority also, in its footnote 1, notes "From the record it would appear doubtful that they [the points I discuss]

were reached even by the local board." This conclusion flies in the face of the presumption of regularity noted earlier, since the board would be required to make these determinations before it could inform the registrant that it would not reopen or, most certainly, before it could make the required finding that there had been presented a prima facie claim of a change of status resulting from circumstances beyond the registrant's control. Here, the only significant notation made by the board and appearing in the Selective Service file is "Reviewed and not reopened." From this, I cannot agree that there is any doubt whatsoever that the board, performing its duty with regularity, could have blinded itself to the recorded facts which I have specified.

All the above notwithstanding, it seems clear to me that even if we construe the District Court's statements at the conclusion of the argument as a ruling that as a matter of law there could be no change to conscientious objector status after receipt of the induction notice, still we should hold that the District Court was not in a position to reach this question since Ehlert presented no factual basis upon which his board could have justifiably based a finding that he had presented a prima facie claim for a change of status resulting from circumstances beyond his control.[2] From Ehlert's own revelations, the board was thoroughly justified in concluding that his representations as to his beliefs, even if true, would not legally entitle him to conscientious objector status and that such beliefs were not first reached after the notice to report for induction was sent and received. Even, therefore, if we assume, arguendo, that the opposing views[3] of the dissenters are correct, I submit that we would

2. The *Gearey* court itself recognized that late filing could be a factor in determining the sincerity of the claim or the time of crystallization. United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966).

3. The dissenters see a "hiatus" created by the fact that a literal construction of Department of Defense Directive No.

1300.6 could support the conclusion that the military will not consider claims arising before actual induction. I believe that the supposed "hiatus" is more fancied than real. I do not read the directive in this way, since the thrust of the directive is toward claims arising before the induction notice. Moreover,

nevertheless be compelled to affirm the judgment of conviction.

CHAMBERS, Circuit Judge (concurring):

In my view, the case should be disposed of as Judge Ely would. However, a clear majority of the judges, including the dissenters, thinks the case should be resolved "on the Road to Damascus." On that road, I agree with Judge Kilkenny. Therefore, I concur in Judge Kilkenny's opinion.

MERRILL, Circuit Judge, with whom Circuit Judges HAMLEY, KOELSCH, BROWNING and HUFSTEDLER join, dissenting:

The majority opinion, affirming the District Court, holds as matter of law that crystallization of a registrant's conscientious objection to war is not, under 32 C.F.R. § 1625.2, "a change in [his] status resulting from circumstances over which [he] had no control."[1] In this posture of the case we must assume that appellant in fact enjoys the status of a conscientious objector but is precluded from recognition of that status by virtue of the provisions of the regulation. Two distinct contentions were advanced by appellee in support of the District Court. The majority opinion appears to rely on both.

1. First it was contended that crystallization of conscientious objection is not a "circumstance" under the regulation; that by "circumstances" the regulation was intended to include only such objectively ascertainable conditions as a change in dependency status or physical condition; that it was not meant to include such intangible considerations as state of mind. For two reasons, I find this contention unacceptable: (a) I do not believe the regulation is rationally subject to such a construction; (b) so construed, I would hold the regulation to be contrary to statute and invalid.

(a) A "change in the registrant's status" under the regulation can have reference only to a change in the registrant's right to a particular classification. "Circumstances" in this context can have reference only to the conditions relevant to such a change of status. In the case of the conscientious objector status the only relevant condition or circumstance is the registrant's state of mind. The effect of the majority's construction is to single out conscientious objector as one status entitled to no consideration at this stage of the proceedings. I cannot attribute to the regulation such a discriminatory result.

Further this construction would seem to create an anomalous situation noted in United States v. Gearey, 368 F.2d 144 (2d Cir. 1966); cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).[2]

---

I am confident that military authorities would recognize a probable constitutional obligation to consider the genuineness of an inductee's claim that conscientious objector beliefs had become fixed within the brief period between the time of the notice to report for induction and his actual induction into the armed forces.

1. The points raised in Judge Ely's concurring opinion were not reached by the District Court. From the record it would appear doubtful that they were reached even by the local board. Before the District Court the appellant asserted that the local board's decision not to reopen was based solely on the ground that his change in status was not beyond his control. The District Court dealt with the case in a manner consistent with this position.

2. Footnote 11, 368 F.2d at page 150, states:

"Any other conclusion would result in the anomalous situation that individuals whose claim of conscientious objection mature either prior to receipt of a notice of induction or after induction itself, would be permitted to apply for deferment, while those whose beliefs formed during the interim period, would not be able to properly raise their claims. It would appear this is so because Department of Defense Directive No. 1300.6 states:

Federal courts have held that a claim to exemption from military service under the UMT&S Act must be interposed prior to notice of induction and failure to make timely claim for exemption constitutes waiver of the right to

The Congressional policy against requiring combatant training and service of those conscientiously opposed to participation in war is one of long standing. *See* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). It finds its counterpart in the policy of the armed forces that conscientious objectors should be discharged from service or assigned noncombatant duty. The armed forces quite appropriately focus their attention on conscientious objection crystallizing after induction, leaving cases of earlier crystallization to the jurisdiction of the Selective Service System.

The majority's construction thus creates a hiatus: Those who become conscientious objectors after notice of induction but before actually being inducted would appear to be excluded from application of the Congressional policy. Application of the policy is made to depend not on one's true status but on when one acquired it.

(b) Legislation creating this exemption from military service, 50 U.S.C. App. § 456(j) provides for no such limitation. The enforcement of orderly procedures may well require default to be imposed for failure of a registrant to claim in timely fashion. But here the limitation is not based on procedural default. It acts upon the substance of the status itself, and serves to diminish what Congress has bestowed. I regard it as beyond the rule-making power of the System so to exclude from application of the exemption anyone who by virtue of his status is entitled to it under law; or, for reasons of expediency, to relieve itself from the onus of its clear obligation to entertain timely claims of status on the part of registrants not yet inducted into military service.

2. It was next contended that this "circumstance" (crystallization of conscientious belief), accepting it as such, cannot be said to be one over which the registrant has no control. In other words, assuming appellant to be a true conscientious objector, it was within his control not to become one.

This strikes me as a disparagement of the concept of conscience most out of tune with the prevailing mores of the day. One simply cannot order his conscience to be still or make himself believe what he does not believe and I must reject the implication that it is right and proper that one should suffer loss of status for having failed to bring his conscience to heel.

Conscientious objection, in truth, is a contradiction of control. Just as a conviction honestly dictated by conscience cannot be banished at the will of the holder, so, conversely, a belief conveniently subject to the control of the holder is not conscientiously entertained.

The issue for the board after notice of induction is, then, no different from that presented by an earlier claim: Is the avowed belief conscientiously entertained?[3] Only the procedure of its resolution differs. But this factual issue should be faced and not be disposed of as a matter of law on such an assumption as is here advanced.

I would reverse.

---

claim. Therefore, request for discharge after entering military service, based solely on conscientious objection which existed but was not claimed prior to induction or enlistment, cannot be entertained. Similarly, requests for discharge based solely on conscientious objection claimed and denied by Selective Service prior to induction cannot be entertained."

3. The further issue is presented: Did the belief in fact crystallize after receiving notice of induction and thus constitute a *change* in status? Dugdale v. United States, 389 F.2d 482 (9th Cir. 1968).