UNITED STATES of America,
Plaintiff-Appellee,

v.

Dwight Stuart NORDLOF, Defendant-Appellant.

No. 18051.

United States Court of Appeals,
Seventh Circuit.

Jan. 5, 1971.

Rehearing Denied March 31, 1971.

Patrick T. Murphy, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Michael P. Siavelis, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; James R. Thompson, 1st Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Jeffery Cole, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Defendant Nordlof appeals from his conviction, without a jury, of refusing to submit to induction into the armed forces in violation of 50 U.S.C. App. § 462. The issue presented is whether a Selective Service registrant's claim for conscientious objector classification made for the first time after receipt of an Order to Report for Induction may be a "change in status resulting from circumstances over which the registrant had no control" within the meaning of 32 C.F.R. § 1625.2. The district court held that such a belated claim cannot, as a matter of law, be such a change of status. We hold to the contrary, and reverse Nordlof's conviction.

Nordlof registered for the draft November 18, 1963, and was classified I–A. He was later reclassified II–S, student deferment, until August, 1968, when he was reclassified I–A. His appeal from that classification was denied. There-after he was ordered to report for induction on October 28, 1968. He reported, but refused to submit.

At the induction center, Nordlof wrote and presented to a Selective Service System official a six-page statement containing his claim of conscientious objection to war. Presumably Nordlof's claim did not reach, and was not considered by, his local board.

On July 1, 1969, Nordlof was indicted for failure to submit to induction. Before his trial Nordlof moved for remandment to the local board for its determination on his conscientious objection claim. The motion was denied. At trial, his defense testimony[1] in support of his conscientious objection claim was stricken on the ground that Selective Service Regulation § 1625.2 precludes a registrant from asserting his conscientious objection status after receipt of an order to report for induction. The authority for the district court's ruling was this court's decision in Porter v. United States, 334 F.2d 792 (7th Cir. 1964). Nordlof's main challenge is with respect to the court's determination of this issue.

Section 1625.2 provides, in relevant part:

* * * The classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control. 32 C. F.R. § 1625.2.

The courts of appeals are divided in their holdings on whether this section permits a local board to reopen a regis-

---

[1] The following testimony is before us as an offer of proof. Nordlof was a high school teacher in Fort Madison, Iowa when he met Shirley Guzman in December, 1967. Miss Guzman is a Jehovah Witness and the daughter of the presiding minister of the Kingdom Hall in Fort Madison. They began to date in spring of 1968, and were later married.

In August and September of 1968, Nordlof began discussing with Miss Guzman's father the teachings of the Bible concerning war and killing. Nordlof testified that during the month of October he began to "make his mind over," but that he was not sure of his convictions until the day of his induction when he refused to enter the army.

trant's classification after receipt of a post-induction order conscientious objection claim.[2] This court is in the negative camp by virtue of United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953).

In *Schoebel* this court decided conscientious objections resulting from "the promptings of a registrant's conscience" cannot be a "change in * * * status resulting from circumstances over which the registrant had no control;" and accordingly that Schoebel's board could not have reopened his classification under § 1625.2 on his claim made for the first time after the order to report for induction. The decision in Porter v. United States, 334 F.2d 792 (7th Cir. 1964), which the district court relied on in its decision against Nordlof, was based on authority of *Schoebel*, as was the earlier case of United States v. Porter, 314 F.2d 833 (7th Cir. 1963).

Nordlof urges that *Schoebel* should be overruled. He relies principally upon the holding of the Second Circuit in United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966). In *Gearey*, reaffirmed in United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968), the court held that a conscientious objector claim can "mature" or "crystallize" after a registrant has received his notice to report for induction, and that this may be a change in status resulting from circumstances over which the registrant has no control within the meaning of § 1625.2, thereby entitling him to a reopening of his classification. This holding was followed by the recent Third Circuit decision in Scott v. Commanding Officer (Volatile), 431 F.2d 1132 (3rd Cir. 1970).

The government argues, on the other hand, that the ruling in *Schoebel* is sound and should not be overturned. It relies heavily upon the reasoning in the Ninth Circuit's recent *en banc* decision (five of thirteen judges dissenting) in Ehlert v. United States, 422 F.2d 332 (1970). The court in *Ehlert* considered, but declined to follow, the Second Circuit's decision in *Gearey*. The court stated that Ehlert as a rational human being is in "complete charge of his own thinking" and therefore a belated claim for conscientious objector classification is a circumstance within his control. The court also thought that conscientious objection claims pose more difficulty of adjudication for boards than other claims because of the necessity of determining sincerity with a depth inquiry into claimant's family life, religious training, etc. The court went on to say that if it were to follow *Gearey* the local board would be required to determine when the registrant's beliefs crystallized, or more accurately, when the registrant claims that his beliefs crystallized; and that such a procedure would be unduly burdensome for local boards.

We cannot accept the reasoning of the *Ehlert* court. Even assuming that the majority is correct in stating that man is in complete charge of his own thinking, it does not follow that man can control his conscience. We think conscience is not the same as thinking. Webster defines conscience as "a knowledge or feeling of right and wrong, with a compulsion to do right; moral judgment that prohibits or opposes the violation of a previously recognized ethical principle."[3] Implicit in this definition is the notion that the dictates of conscience are involuntary and compulsory and outside the control of the holder of

---

2. The Fourth, Sixth and Ninth Circuits have held that a local board may not reopen upon receipt of a post-induction order conscientious objection claim. United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966); United States v. Jennison, 402 F.2d 51 (6th Cir. 1968), cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225; Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970). The Second, Third and Tenth Circuits have held to the contrary. United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L. Ed.2d 368 (1967); Scott v. Commanding Officer (Volatile), 431 F.2d 1132 (3rd Cir. 1970); Keene v. United States, 266 F.2d 378 (10th Cir. 1959).

3. Webster's New World Dictionary (1964).

the beliefs. We can perhaps control our thinking concerning whether and to what extent a moral duty exists prior to the operation of conscience on a moral issue. We can also control, when faced with the moral issue, whether or not to follow the dictates of conscience. But, as Kant points out, when a moral issue presents itself and demands action, "then conscience speaks involuntarily and inevitably."[4] This view that conscience is beyond the control of its subject appears to us as the better view, and is borne out by eminent philosophical and theological authority.[5]

■ We therefore favor the views of Judge Seitz, expressed in *Scott*: "one cannot sincerely turn his conscience on and off at will;" and of Judge Merrill in his dissent in *Ehlert*: "Conscientious objection, in truth, is a contradiction of control. Just as a conviction honestly dictated by conscience cannot be banished at the will of the holder, so, conversely, a belief conveniently subject to the control of the holder is not conscientiously entertained." 422 F.2d at 339. We conclude that conscience is beyond the control of the registrant.

It is our further view that a conscientious objection belief may mature and crystallize after the registrant receives his Order to Report for Induction. The general formation of conscience is said by Freud to commence early in childhood, and development is a continuous process of meeting particular moral decisions.[6] The late Paul Tillich said "The constitution of a person as a person never comes to an end during his whole life process," it is a "process of self-integration * * * a continuous struggle with disintegration," in which he is free to develop "the moral side of the function of self-integration" in the totality of acts which face him in life.[7] This view is supported by other eminent authority.[8]

■■ It follows that a conscientious objection to war, while developing before, can mature after, a registrant has received an Order to Report for Induction. As Judge Seitz in *Scott* states: "Although a registrant may have no conscientious objector leanings at all when he registers, his beliefs may later begin to evolve toward conscientious objection."[9] This view is impliedly accepted by the Supreme Court in Welsh v. United States, 398 U.S. 333, 336, 90 S. Ct. 1792, 26 L.Ed.2d 308 (1970). The term of this particular development can be due, in part, to the receipt of the notice itself. As Judge Kaufman in *Gearey*, 368 F.2d at 150, says: "Realization that induction is pending, and that he may soon be asked to take another's life, may cause a young man finally

4. Critique of Practical Reason (Longmans ed. 1954) 311–12.

5. S. Juergens, Newman on the Psychology of Faith (1928) 155–56; D. Hume, Treatise (Vol. 2, Everyman ed.) 313–14; H. H. Price, "Belief and Will," Proceedings of the Aristotelian Society (Vol. XXVIII, 1954) 14–15; Aquinas, Summa Theologica, Q. 79, Art. 13; Bonhoeffer, Ethics (SCM Press 1955) 5ff.; Jung, "A Psychological View of Conscience," Studies in Jungian Thought: Conscience (Northwestern Univ. 1970) 103; William James, The Principles of Psychology (Dover 1918) 672. *See generally* Judge Aldisert's concurring opinion in Scott v. Commanding Officer (Volatile), 431 F. 2d 1132 (3rd Cir. 1970).

6. R. W. Woodward, Psychology (Fourth ed.) 180, 187.

7. P. Tillich, Systematic Theology (Vol. 3, 1963) 32–51.

8. Kant, Lectures on Ethics (Torchbook ed. 1963) 134; ...., Philosophy of Hegel (Modern Library ed. 1953) 258; Brennan, The Ethics of William James (1961) 129–38; S. Jurgens, Newman on the Psychology of Faith (1928) 135–37.

9. We disagree with *Scott* to the extent that it requires, or permits, the local board to consider, in determining whether to reopen the registrant's classification, the sincerity of the registrant's beliefs. *See* Mulloy v. United States, 398 U.S. 410, 417–418, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Freeman, 388 F.2d 246, 248–249 (7th Cir. 1967). *See also* footnote 12 *infra*.

to crystallize and articulate his once vague sentiments."

We think Nordlof's readings in the Bible and his discussions with Mr. Guzman could have given him a view different from what he previously had concerning his duty with respect to war. His conscience then could have begun to form with respect to the particular moral issue that was facing him, and might have reached its fruition only when his induction was at hand.

We conclude that crystallization of conscientious objection beliefs may be a change in status resulting from circumstances over which the registrant had no control. We therefore overrule *Schoebel* as the law of this circuit.[10]

■ We are not impressed by the government's argument that, practically speaking, belated crystallization is "highly improbable if not impossible." We cannot speculate that Nordlof's board upon consideration of his claim would view it as "highly improbable." Moreover, such a determination goes to the merits of Nordlof's claims, which are not to be considered unless a reopening is granted. Mulloy v. United States, 398 U.S. 410, 416–418, 90 S.Ct. 1766, 26 L. Ed.2d 362 (1970); United States v. Freeman, 388 F.2d 246, 248–249 (7th Cir. 1967).

■ Nor do we think the government is aided by the fact that once a claimant is inducted he has the "absolute right" to file a conscientious objection claim which, if he persuades the military to grant it, will result in discharge from combat service. This post-induction process effectually presupposes that Nordlof's claim is not sincere, for if he sincerely objected to participation in war, he would not enter the military. Moreover, Army Regulation 635–20,[11] which concerns post-induction claims for conscientious objection status made while in the army, might be interpreted to preclude claims that crystallized prior to induction but were denied by the Selective Service System because made after an induction order was mailed.

■ And even if a board determination of the sincerity of a conscientious objection claim is burdensome to local boards, we cannot agree with the *Ehlert* court that this is a relevant ground for turning away the claim. The only question is whether a recently formed conscientious objection belief is, or may be, a change in status resulting from a circumstance which is beyond the control of the registrant, thereby entitling the registrant to a reopening. This is the criterion set forth in § 1625.2, and the only relevant inquiry is whether conscientious objection meets the criterion.

■ We reject also the government's argument that Nordlof had time between his registration and induction order to inform his board of his "newly acquired beliefs," and that by failure to do so has waived his right to have the board consider his claim. This argument presupposes the correctness of the *Schoebel* rule, that a crystallization of belief after induction order cannot as a matter of law amount to a circumstance over which Nordlof had no control. It also presupposes that Nordlof's conscience was formed before receipt of the induction order so as to render his claim

---

10. Since this opinion overrules United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953), we have circulated the opinion to the active members of the court not on the panel. A majority of the court agrees that *Schoebel* should be overruled.

The decisions in United States v. Porter, 314 F.2d 833 (7th Cir. 1963), and Porter v. United States, 334 F.2d 792 (7th Cir. 1964), on the issue before us fall with *Schoebel*.

11. Army Regulation 635–20, in paragraph 3b, provides:

Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction.

waivable. Belatedness itself is not a good reason for refusing to consider a claim, although it is a factor a board may consider on the board's ultimate question of sincerity, once a reopening has been granted. United States v. Gearey, 368 F.2d at 149–150. This court's decision in United States v. Angelico, 427 F.2d 288 (7th Cir. 1970), therefore does not militate against our rejection of the government's waiver claim.

 Finally, we see no merit in the government's contention that Nordlof did not at any time file his claim with the board. The administrative process had not terminated when he filed his claim with an official within the Selective Service System who should have forwarded it to the board.[12] United States v. Stafford, 389 F.2d 215, 219 (2nd Cir. 1968).

The judgment is reversed.

KNOCH, Senior Circuit Judge (dissenting).

Reluctantly I find myself in disagreement with the majority. I do not believe that our decision in United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953) should be overruled at this time.

12. We think the proper procedure for the board to follow in considering claims of conscientious objection made after the registrant receives an order to report for induction is as follows: The board must first consider the claim, United States v. Shermeister, 425 F.2d 1362 (7th Cir. 1970), and determine when the registrant's beliefs matured. If it decides—with a basis in fact in the record and assuming that the registrant's statements are true, as required by § 1625.2—that the beliefs matured before the registrant received the order or that the facts presented add no new information to the file or that the claim does not present a prima facie showing for a new classification, the claim can be denied. See United States v. Stafford, 389 F.2d 215, 219 (2nd Cir. 1968). If the board decides that the claim matured after receipt of the order, discloses a prima facie showing for a new classification, and is not refuted by reliable facts in the file, the board must reopen and determine the registrant's sincerity in making the claim. Mulloy v. United States, 398 U.S. 410, 415–416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

Under this procedure a registrant will not be able to postpone his induction indefinitely by presenting new conscientious objection claims to the officials at the induction center after his original conscientious objection claim has been denied. The induction officials must send the new claim to the local board to consider whether a reopening is warranted, United States v. Stafford, 389 F.2d 215 (2nd Cir. 1968), and the board must *consider* such matter, United States v. Shermeister, 425 F.2d 1362 (7th Cir. 1970), but the board need not reopen unless there is new evidence not previously presented, United States v. Mulloy, 398 U.S. 410, 418 n. 7, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). If the board decides not to reopen, there is no administrative appeal from that decision and the board is required merely to notify the registrant of this decision, 32 C.F.R. § 1625.4, the existing Order to Report for Induction is still valid and the registrant may be indicted should he have refused to take the symbolic step forward. *See, e. g.*, United States v. Stone, 422 F.2d 968 (10th Cir. 1970); United States v. Gearey, 368 F.2d 144, 152 (2nd Cir. 1966). In *Stone* the local board refused to reopen after the induction order was sent but before the registrant had reported for induction and refused to submit. We see no reason why the same procedure could not be followed after the registrant has reported but failed to submit to induction. It is only when a reopening is granted that a prior induction order is canceled, and that a new induction order is issued after the registrant is reclassified I–A. 32 C.F.R. § 1625.14.