PFC E-3 Bruce Dale BAKER, Petitioner,

v.

Melvin R. LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, and Major General Philip B. Davidson, Jr., Commanding General, Fort Ord, California, Respondents.

Civ. No. C-70-1372.

United States District Court,
N. D. California.

July 31, 1970.

**2**

Richard M. Silver, Heisler & Stewart, Carmel, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for respondents.

GERALD S. LEVIN, District Judge.

Petitioner Bruce Dale Baker is presently a Private First Class in the United States Army stationed at Ford Ord, California. He brings this petition for a writ of habeas corpus in order to secure his discharge from military service as a conscientious objector, his application therefor having been denied by the Army.

The facts and events pertinent to Baker's claim are as follows. Prior to his receiving orders to report for induction, Baker was mailed SSS Form 150 (Conscientious Objector Questionnaire) on April 22, 1969, pursuant to his request, by Local Board 29 in Phoenix, Arizona. On June 13, 1969, Local Board 29 issued an order to Baker to report for induction on June 25, 1969.

On June 17, 1969, Baker returned his completed SSS Form 150 to Local Board 29, whereupon the Board immediately postponed his induction.

On August 6, 1969, Local Board 29 determined that Baker's beliefs did not qualify him for conscientious objector status and refused to reopen his case and accord him a hearing on the matter. Baker was sent a letter notifying him of the Board's decision on August 7, 1969. Thereafter, on September 3, 1969, Baker was inducted into the United States Army at Los Angeles, California.

After completing Basic Combat and Advanced Individual Training, Baker was ordered on January 21, 1970, to report to the Overseas Replacement Station, Fort Dix, New Jersey, by February 8, 1970, for ultimate assignment to Europe.

On February 2, 1970, Baker submitted his application for discharge as a conscientious objector under the provisions of Department of Defense Directive 1300.6 and Army Regulation 635–20.

Procedure under Army Regulation 635–20 calls for a series of interviews of the applicant to be conducted by a psychiatrist, chaplain, and a hearing officer in the rank of 0–3 or higher. Accordingly, on January 28, 1970, Baker had been examined by a psychiatrist, and the latter found no evidence of psychiatric disease.

On February 4, 1970, Baker was interviewed by Chaplain Rich, who concluded that Baker was sincere in his belief and objection to participation in war in any form and that Baker's conviction was primarily religious in basis and origin.

On February 12, 1970, Baker was interviewed by 0–3 hearing officer Zanoni. The hearing officer noted Baker's background and professed beliefs in his report dated March 12, 1970, putting great emphasis on the fact that Baker indicated that his views might not have been fully formed when he made his earlier application to Local Board 29 for conscientious objector status. The hearing officer concluded that,

> If he [Baker] is to be believed, Private Baker worked a fraud upon his local draft board by applying for con-scientious objector status; this would cast substantial doubt upon Private Baker's sincerity in his instant application. In my opinion, however, Private Baker attempted to deceive this hearing officer with regard to the time when his conscientious objector beliefs became fixed. I find that Private Baker's beliefs existed prior to his entry on active duty.

Accordingly, the hearing officer recommended disapproval of Baker's application on the ground that his conscientious objector beliefs "did not develop or become fixed after entry on active duty as required by para 3b'(1), AR [Army Regulation] 635-20." Baker submitted a rebuttal letter to the report of the hearing officer dated March 10, 1970, in which he explained the strengthening of his views after entry into the Army; the fact that he was indeed sincere in making both applications, but that his current application represented a new and more confirmed position; and that the hearing officer had misunderstood or misinterpreted many of his statements to him during the course of the interview. An investigation was made into Baker's allegations by a Staff Judge Advocate who concluded that the allegations were not supported by the evidence of record.

Thereafter Baker's company commander and battalion commander, as well as the commanding general of Fort Ord, all found Baker to be sincere and unqualifiedly recommended approval of his application. In his report dated March 5, 1970, Battalion Commander Kotas noted that,

> It is entirely possible that PVT Baker had certain reservations about serving in the Army prior to his induction. However, I believe that Basic Training solidified his convictions and prompted him to submit a 1–0 application even though his previous CO application was disapproved by his draft board.

On May 22, 1970, the Department of the Army Class I–O Conscientious

Objector Review Board disapproved Baker's application for the reason that Baker's professed views became fixed prior to his entry into the active military service. Notification of this decision was sent shortly thereafter to Baker.

On June 10, 1970, Baker submitted a second application for discharge. This application was reviewed by the commanding general of Ford Ord and returned without action as being substantially the same as the initial application (a permissible disposition under Army Regulation 635-20, Paragraph 5).

As the Government points out in its Memorandum, the function of this court in reviewing the claims presented by Baker is limited to ascertaining whether there was (1) compliance with the applicable provisions of Army Regulation 635-20 and (2) a basis in fact for the Army's rejection of Baker's initial application. The court finds that neither of these elements has been satisfied in the instant case and therefore Baker's petition must be granted for the reasons following.

Army Regulation 635-20, in Paragraph 3b, states as a matter of policy that,

Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty for training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction.

The decision of the Army Class I-O Conscientious Objector Review Board to deny Baker's application for discharge cites as its sole reason therefor the fact that Baker's professed views "became fixed prior to his entry into the active military service," which reason is based wholly upon the single adverse finding made by the 0-3 hearing officer. Such

determination will not suffice to support the action of the Army here since it reflects an incorrect reading of Army Regulation 635-20.

The court does not regard the use of the word "solely" in Paragraph 3b(1) and (2) to be mere surplusage. Rather, its inclusion would indicate that the Army could deny an application for discharge to one claiming to be a conscientious objector where his application reveals that the grounds and beliefs adduced in support thereof are identical with those shown to have pre-existed induction (but which were not then claimed) or to have formed the basis for an application made and denied prior to entry into the service. On the other hand, where the in-service application is based on views or grounds which differ from those held and/or expressed prior to induction, Paragraph 3b clearly does *not* authorize a denial of the application for the reasons stated therein.

In the present case, although Baker did make a pre-induction claim for conscientious objector status, it is obvious from his statements and the other documentation contained in his service file that his in-service application represented a serious and substantial change and crystalization of his views vis-a-vis those expressed in his earlier application. Under similar circumstances, the court in United States ex rel. Barr v. Resor, 309 F.Supp. 917 (D.D.C.1969), said:

There was also uncontradicted evidence that this new conviction is based on the combination of petitioner's religious beliefs formed in the past and the result of the experience gained from combat training subsequent to induction which 'strengthened' his convictions. *This combination represents then, not the same claim which was considered by the Selective Service Board, but rather it represents a different claim* albeit based in part on unmatured religious beliefs which petitioner presented in support of the initial claim but which

became fixed after entering the service. (Emphasis added.)

No matter what significance is given the word "solely" as it is used in Paragraph 3b of Army Regulation 635–20, the clear terms of that paragraph were not complied with for another reason. Paragraph 3b contemplates four possible situations as respects an applicant for discharge as a conscientious objector:

(1) Those whose views had not fixed prior to active service and who had not made a claim for conscientious objector status;

(2) Those whose views had fixed prior to active service but who failed to make a claim at that time for conscientious objector status;

(3) Those whose views had fixed prior to active service and who made a claim for conscientious objector status but, for whatever reason, never had their claim acted upon;

(4) Those whose views had fixed prior to active service and who had made a claim for conscientious objector status based thereon, which claim had been denied on the merits.

Under situations (2) and (4), expressly referred to in Paragraph 3b, the Army would be justified in denying an application for discharge, providing, of course, that the "solely" requirement had been satisfied. Similarly, situation (1) is excluded by Paragraph 3b and is the most common circumstance under which an applicant may have his request for a discharge considered and granted.

█ In the present case, if the 0–3 hearing officer and the Army Class I–O Conscientious Objector Review Board are to be believed, Baker is disqualified from in-service application by neither situation (2) [Paragraph 3b(1)] nor by situation (4) [Paragraph 3b(2)]: if Baker's views were fixed prior to induction, Paragraph 3b(1) does not disqualify him because he did in fact claim conscientious objection, and Paragraph 3b(2) does not disqualify him since his conscientious objection, although claimed, was not denied (on the merits).

What the court is left with is an instance of situation (3) noted above, which situation does not preclude an applicant from obtaining conscientious objector status under Army Regulation 635–20. Accordingly, the reason given by the Army Class I–O Conscientious Objector Review Board for the denial of Baker's application, namely that his views "became fixed prior to his entry into the active military service," is legally insufficient under the analysis just given to disqualify one for application under Army Regulation 635–20. The standard articulated in Paragraph 3b is not whether the applicant's views became fixed prior to entry, but rather whether they were either fixed and not claimed, or fixed, claimed, and denied.

█ Given the facts surrounding Baker's claim, there is no other reasonable interpretation of Paragraph 3b as it applies to him. The crystalization requirement of Army Regulation 635–20 is not intended to deny sincere conscientious objectors an opportunity to have their claims considered, but only to designate the proper forum in which their claims should be brought. *See* Milton v. Commanding General, 316 F.Supp. 405 (N.D.Cal.1970). Such a principle of forum apportionment guarantees to the applicant at least one fair chance to have his conscientious objector claim considered. The Government contends that for Baker's in-service application to be entertained would be giving him a second bite at the legal apple, but the facts of the present case are such that to accept the Government's position would be to afford Baker little more than a brush across the mouth of that cherished fruit. Crystalization is undeniably a subtle and ephemeral process which should not be interpreted in such a way as to deny relief to a sincere conscientious objector. Goodwin v. Laird, 317 F.Supp. 863 (N.D.Cal.1970).

█ The report and recommendation of the 0–3 hearing officer reveals just such an insensitivity to the forces bearing on the crystalization of one's views as a conscientious objector. The atti-

tude expressed by the 0–3 hearing officer placed Baker on the horns of a dilemma. If Baker told him that his views were precisely the same at the time of his interview as they were when he made his pre-induction application for conscientious objector status, the 0–3 hearing officer might well have concluded that Baker was disqualified from a "second" application under the "solely" language of Army Regulation 635–20, Paragraph 3b. Baker did not do this, but candidly explained the circumstances of his first application and the subsequent reworking of his beliefs. The 0–3 hearing officer was entitled to disbelieve Baker and question Baker's sincerity, but such doubt had to rest on a rational basis, which basis is not revealed by the substance of the 0–3 hearing officer's report.

 The final argument forwarded by the Government in support of the decision taken by the Army is that Baker waived his right to apply for discharge as an in-service conscientious objector by not seeking habeas corpus immediately upon his induction in order to challenge the action taken by Local Board 29 in refusing to reopen his case.

■ This argument is patently without merit. Waiver occurs only where the party deliberately intends to forego a legal right he is aware of and fully comprehends. *See*, e. g., Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Andre v. Resor, 313 F.Supp. 957 (N.D.Cal.1970). There is no evidence whatsoever in the record here that Baker should have or could have successfully challenged the action of his Local Board by petitioning for a writ of habeas corpus upon his entry into the Army. Moreover, Baker may well have been misled into what action he should have taken at that time. In his rebuttal letter to the 0–3 hearing officer, Baker wrote:

> When I arrived at Reception [sic] Station at Ford Ord, I inquired as to the decision made, if any, upon the validity of my claim, which I submitted

prior to entry into the military. No one was able to tell me anything about it. I was told at this time by a first sargeant [sic] that if I wished to apply again after entry, that I could do so at a later date. He recommended that I go through basic training. Since I had not experienced firsthand any of the training, I felt this was a chance to find out my beliefs.

Accordingly, it is hereby ordered that Bruce Dale Baker's petition for a writ of habeas corpus is granted, and that, being illegally restrained of his liberty, he be discharged from the custody of the Respondents.