**UNITED STATES of America**

v.

**Andrew John SHOMOCK, Appellant.**

**No. 71–1694.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1971.

Submitted Feb. 17, 1972.

Decided June 20, 1972.

J. Jerome Mansmann, McArdle & Mansmann, Michael P. Malakoff, Berger & Kapetan, Pittsburgh, Pa., for appellant.

Thomas A. Daley, Asst. U. S. Atty., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for appellee.

Before BIGGS, ADAMS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The defendant-appellant Shomock was convicted of wilfully failing to submit to induction into the Armed Forces in violation of 50 U.S.C. App. Sec. 462(a). Motions for judgment of acquittal or for a new trial were denied and a sentence of three years imprisonment was imposed. Shomock has appealed. His Selective Service file is in evidence and shows that he registered with his Local Board in 1965. At that time he made no claim to being a conscientious objector. He was enrolled at the University of Pittsburgh and received a student deferment. Following graduation and entrance into a post-graduate language study, Shomock was reclassified 1–A. He appealed that classification but the Appeal Board affirmed the ruling of the Local Board. On January 20, 1969 he was ordered to report for induction on February 5, 1969. Shomock then requested that his induction be postponed until April in order to allow him to complete his then current graduate school term. He was granted this remission by the State Director. On March 17, 1969, the Local Board ordered Shomock to report for induction on April 7, 1969. On March 23, 1969, some two months after the receipt of the original order to report for induction, Shomock wrote the Board to request a conscientious-objector Form 150. On April 9, 1969 the Local Board reviewed his selective service file and found that the information he had submitted on the Form 150 did not warrant reopening his classification. Shomock's selective service file does not disclose why the Local Board rejected Shomock's claim. On March 24, 1969, Shomock sent a letter to the Board requesting postponement of his induction until April 18, 1969 because that was the date on which his current school term was to terminate. The request was granted and his induction was re-scheduled for May 7, 1969.

Pursuant to Shomock's claim for conscientious objector exemption the Local Board reviewed his file and granted him an interview on May 2, 1969. The Board decided that the information submitted at the interview did not warrant the re-opening of Shomock's classification. He arrived at the induction station on May 7, 1969,[1] too late in the day to be processed. He returned for processing on May 8, 1969, and after passing his physical examination indicated that he was not going to remain at the induction station until the induction ceremony. He was advised that such action would constitute

---

1. Shomock's brief states that he arrived at the induction station on *March* 7, 1969, too late to be processed. This date is erroneous.

a criminal offense but he adhered to his intention and departed without complying with further proceessing procedures.[2]

The appellant contends that our decision in Scott v. Commanding Officer, 431 F.2d 1132 (1970), requires Local Boards to consider post induction notice prima facie conscientious-objector claims on their merits and state their reason for denying such claims. This was the holding in Scott. It is difficult to see how the *Scott* case is relevant on this point, since Scott submitted to induction and then petitioned for a writ of habeas corpus on the same day as his submission. *Id.* at 1134. Scott alleged he had been illegally inducted. Scott ". . . promptly completed the Form 150 and sent it to the local board, together with letters from various individuals attesting to the nature and sincerity of his beliefs. On the day after the courtesy interview petitioner was informed by letter that 'It was the unanimous opinion of the board that the new information did not warrant reopening of your classification. . . .' No reason was offered why the information submitted did not warrant reopening and none is noted in petitioner's file."

Scott's ". . . induction was then rescheduled and he submitted to induction on January 16, 1970. [As we have said [h]e petitioned the district court for a writ of habeas corpus on the same day. He alleged that he had been illegally inducted because his local board had failed to reopen his classification and grant him ·conscientious objector status and, alternatively, that his local board 'while purporting to refuse to reopen and consider anew petitioner's I–A classification, did *in fact* so reopen and consider the same anew but refused to grant petitioner . . . the rights of appellate review of the Board's refusal to re-

classify petitioner to Conscientious Objector classification.' "[3]

Shomock did not submit to induction but broke off the process and did not return.

Scott contended that his order for induction was invalid because his Local Board illegally refused to reopen his classification and grant him a conscientious objector status. Our opinion made it clear that the reopening of a Selective Service classification is governed by 32 CFR Sec. 1625.2 and, as was stated, the regulation was construed by the Supreme Court to require that where a registrant makes non-frivolous allegations of facts that have not been considered previously by his board and which, if true, would be sufficient under the regulation or statute to warrant granting the requested reclassification, the board must reopen the classification unless the truth of the new nonfrivolous allegations is "conclusively" refuted by other reliable information in the registrant's file. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

32 CFR Sec. 1625.2 provided that ". . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board *first specifically finds* there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." (Emphasis added).

The opinion in *Scott* states that the case turns on the proper application of the quoted regulation to "a post-induction order claim for conscientious objector status" and a very important point at issue was whether a material change or "crystallization" of conscientious attitude can ever be due to circumstances beyond the registrant's control. We held

---

2. Shomock's Selective Service file shows no execution by him of the "Security Questionnaire," DD Form 98. This issue was not raised in the District Court and we therefore need not discuss it here. United States v. Carter, 401 F.2d 748,

750 (3 Cir. 1968), cert. denied 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797 (1969).

3. 431 F.2d at 1134. (Note omitted).

that a registrant cannot *"sincerely"* turn his conscience on and off at will.[4] The key question, therefore, is whether the registrant *"sincerely"* entertains deeply held beliefs which qualify him as a conscientious objector. See Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). This court then cited the interpretation of the reopening regulation set out by Judge Friendly in Paszel v. Laird, 426 F.2d 1169, 1174 (2 Cir. 1970). This court agreed with Judge Friendly's conclusion that on being presented with "a post-induction-order prima facie conscientious objector claim" the local board may make one of four possible findings, and selected Judge Friendly's "(4)", *viz.*, " . . . no conscientious objection before but conscientious objection after [notice of induction]." We based our decision on the fact that there was nothing in Scott's file to indicate that his asserted beliefs were not sincerely held and the board made no finding of insincerity. We then pointed out that the petitioner's file did not afford any basis for us to determine what the Board "did not believe and why" and " . . . [that] the legality of an induction order must, . . . be tested by the facts presented in the registrant's selective service file. . . . Since petitioner's file contains no statement of the reasons for the board's refusal to reopen his classification, we have no choice but to hold his induction order invalid and direct that the writ be issued." [5]

It will be observed that the *Scott* proceeding involved habeas corpus and that Scott submitted to induction.[6] But nonetheless the case seems to turn on the issuance of an induction order and 32 CFR Sec. 1625.2 is directed to a request made prior to the issuance of an induction order after the Local Board has mailed a notice to report for induction to the registrant. In this case, as we

have already stated, Shomock did not submit to induction.

The next case which requires consideration at length is Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), a criminal proceeding. In *Ehlert*, the question was whether a Selective Service Local Board must reopen the classification of a registrant who claims that his conscientious objection to war "in any form crystallized between the mailing of his notice to report for induction and his scheduled induction date." Ehlert made no claims to conscientious objector status until after he received his induction notice. However, before the induction date he wrote to his Local Board and requested that he be allowed to present his claims to conscientious objector status. He stated that his conscientious objector views had matured, crystallized only after the induction notice which had made immediate the prospect of military service. The Local Board notified Ehlert that it would not reopen his classification because "the crystallization of his conscientious objection did not constitute the 'change in the registrant's status resulting from circumstances over which the registrant had no control.' "

The Local Board refused to reopen Ehlert's classification, as did the Board in the case at bar. Ehlert refused to submit to induction; was indicted; trial by jury was waived, and the District Court "holding that ripening of conscientious objector views could not be a circumstance over which a registrant had no control" and found the petitioner guilty. The Supreme Court stated that it had granted certiorari to resolve a conflict among the circuits over the interpretation of the Selective Service regulation.[7] 32 CFR Sec. 1625.2.

The Supreme Court also stated that a regulation barring post-induction-notice presentation of conscientious objector

---

4. Cf. dissenting opinion, Aldisert, J., Scott v. Commanding Officer, 431 F.2d at 1142.

5. 431 F.2d at 1138. (Citations omitted).

6. 431 F.2d at 1134.

7. In note 5 cited to the text, 402 U.S. at 101, 91 S.Ct. at 1321, four out of ten circuits upheld the minority view.

claims with a proviso that no inductee could be ordered to combatant training or service before a prompt, fair, and proper in-service determination of his claim had been made would be entirely reasonable as a timeliness rule, and that the only unconditional right conferred by statute upon conscientious objectors is exemption from combatant training and service,[8] and that the right to civilian service in lieu of induction arises only if the registrant's claim is sustained by the Local Board. The Supreme Court stated: "It does not follow, given the power to make reasonable timeliness rules, that a registrant has an unconditional right to present his claim to the local board before induction [. . .] Congress seems rather carefully to have confined the unconditional right created by the statute to immunity from combatant training and service. Consequently, requiring those whose conscientious objection has not crystallized until after their induction notices to present their claims after induction would work no deprivation of statutory rights, so long as the claimants were not subjected to combatant training or service until their claims had been acted upon.

"That those whose views are late in crystallizing can be required to wait, however, does not mean they can be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria that must guide the Selective Service System. See Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 [1970]. The very assertion of crystallization just before induction might cast doubt upon the genuineness of some claims, but there is no reason to suppose that such claims could not be every bit as bona fide and substantial as the claims of those whose conscientious objection ripens before notice or after induction. It would be wholly arbitrary to deny the late crystallizer

a full opportunity to obtain a determination on the merits of his claim to exemption from combatant training and service just because his conscientious scruples took shape during a brief period in legal limbo. A system in which such persons could present their claims after induction, with the assurance of no combatant training or service before opportunity for a ruling on the merits, would be wholly consistent with the conscientious objector statute." [9]

Mr. Justice Stewart went on to say: "We need not take sides in the somewhat theological debates about the nature of 'control' over one's own conscience that the phrasing of this regulation has forced upon so many federal courts. Rather, since the meaning of the language is not free from doubt, we are obligated to regard as controlling a reasonable, consistently applied administrative interpretation if the Government's be such. Immigration & Naturalization Service v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 [1969]; Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 [1969]; Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 [1965]; Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 [1945].

"The Government argues for an interpretation identical in effect with the unambiguous rule hypothecated above, which, we have said, would clearly be a reasonable timeliness rule, consistent with the conscientious objector statute. The Government's interpretation is a plausible construction of the language of the actual regulation, though admittedly not the only possible one. Given the ambiguity of the language, it is wholly rational to confine it to those 'objectively identifiable' and 'extraneous' circumstances that are most likely to prove manageable without putting undue burdens on the administration of the Selective Service System. It appears, moreover,

8. Military Service Act of 1967, Sec. 6(j), 81 Stat. 104, 50 U.S.C. App. Sec. 456(j), (1964 ed. Supp. V).

9. 402 U.S. at 103–104, 91 S.Ct. at 1322. (Notes omitted).

that this position has been consistently urged by the Government in litigation when it was not foreclosed by adverse local precedent.

"There remains for consideration whether the conditions for the validity of such a rule, discussed above, are met in practice. It appears undisputed that when an inductee presents a prima facie claim of conscientious objection that complies with timeliness rules for in-service cognizability, he is given duty involving the minimum practicable conflict with his asserted beliefs. It is thus evident that armed forces policy substantially meets the requirement of no combat training or service before an opportunity for a ruling on the claim.

"As for the absence of any no man's land, the pertinent military regulations are somewhat inconsistent in their phrasing, perhaps because of the sharp division among the courts of appeals. They contain language appearing to recognize the obligation of the service to hear the claims of those whose alleged conscientious objection has crystallized between notice and induction, but they also contain formulations seeming to look the other way. We are assured, however, by a letter included in the briefs in this case from the General Counsel of the Department of the Army to the Department of Justice, that present practice allows presentation of such claims, and that there thus exists no possibility that late crystallizers will find themselves without a forum in which to press their claims. Our conclusion in this case is based upon that assurance. For if, contrary to that assurance, a situation should arise in which neither the local board nor the military had made available a full opportunity to present a prima facie conscientious objection claim for determination under established criteria, see Welsh v. United States, *supra*, a wholly different case would be presented." [10]

Note 11 cited to the text in *Ehlert* states: " 'You also asked whether the Army allows a soldier to file for discharge in instances where his conscientious objector views are fixed after notice of induction but prior to entry into the military service. Present practice grants the soldier the opportunity to file in such cases.'

"The letter additionally explains the composition and operation of the Army I–O Conscientious Objector Review Board, which has the responsibility of ruling on applications for conscientious objector discharges. The Board is composed of a senior officer, an officer in the Judge Advocate General Corps, a chaplain, and a Medical Corps officer. Only two votes are required to approve an application."

The *Ehlert* opinion ends with this statement: "Given the prevailing interpretation of the Army regulation, we hold that the Court of Appeals did not misconstrue the Selective Service regulation in holding that it barred presentation to the local board of a claim that allegedly arose between mailing of a notice of induction and the scheduled induction date. Accordingly the judgment of the Court of Appeals for the Ninth Circuit is affirmed." [11]

It appears, therefore, as was stated by Mr. Justice Douglas in his dissenting opinion, *id.* at 108, 91 S.Ct. at 1325, "The Court holds that the proper remedy is in-service processing of these claims [*i. e.,* such as Ehlert's]. That is to say the claims that come so late, even though they come prior to induction, are to be processed by military rather than by civilian personnel."

It is clear that judgments like that of the Court of Appeals for the Fourth Circuit in United States v. Al-Majied Muhammad, 364 F.2d 223 (1966), were sustained as correct. As to the earlier statement which we have quoted respecting "the somewhat theological debates about

10. 402 U.S. at 105–107, 91 S.Ct. at 1323. (Notes omitted).

11. 402 U.S. at 107–108, 91 S.Ct. at 1325.

the nature of 'control' over one's own conscience," the Court concluded: "[S]ince the meaning of the [32 CFR Sec. 1625.2] language is not free from doubt, we are obligated to regard as controlling a reasonable, consistently applied administrative interpretation if the Government's be such." Citing such cases as Immigration & Naturalization Service v. Stanisic, *supra*, 395 U.S. at 72, 89 S.Ct. 1519, etc. *Ehlert*, 402 U.S. at 105, 91 S. Ct. 1319, 1323. This statement seems to involve a different concept than that expressed by this court in Scott v. Commanding Officer, where Mr. Justice Douglas' "Road-to-Damascus" theory was relied on.[12]

Shomock's claim to conscientious-objector status has never been determined and since obviously it must be in view of *Scott*,[13] *Ehlert* and Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972),[14] we must decide where Shomock's claim should be determined. As we have stated, Shomock's conscientious scruples arose between the time of receipt of the order of the Board requiring him to report for induction and his scheduled induction into the Army, and in his case since his induction never took place it seems obvious that his status should presently be determined in the United States Courts without requiring his induction and thereafter the filing by him for habeas corpus.

Under AR 635–20 ¶ 3(b) as it has been interpreted in *Ehlert*, 402 U.S. at 106–107, 91 S.Ct. 1319, Shomock might still not receive a full and fair hearing of his conscientious objector claim by the Army. *Ehlert* should eliminate any Ar-

my reluctance to review Shomock's claim under ¶ 3(b) (1), but ¶ 3(b) (2), which covers the unelaborated "denial" by the Selective Service of Shomock's conscientious objector claim prior to induction, still exists to give the Army a basis to avoid reaching a decision on the merits of his claim. Part of our holding in *Scott*, 431 F.2d at 1138, indicates that without elaboration by a statement of the reasons for a denial by a Local Board, a prima facie conscientious objector claim[15] would *not* be considered to have been reviewed on the merits.[16] A reading of ¶ 3(b) (2) does not indicate whether the Army would consider a mere denial unelaborated by the Local Board to be a denial on the merits. Even if Shomock were allowed to submit to induction to have his claim heard, he has no guarantee of his present entitlement to a military hearing. See Grubb v. Birdsong, 452 F.2d 516 (6 Cir. 1971). *Ehlert*, 402 U.S. at 107, 91 S.Ct. 1319, suggests that where doubt exists, as here, that the Army will provide a full opportunity for Shomock to present his prima facie claim, *Ehlert* does not control. The fact remains, however, that somewhere, sometime, Shomock is entitled to have a full and fair hearing on the merits of his conscientious objector claim. *Ehlert*, 402 U.S. at 103–104, 91 S.Ct. 1319. We are not assured that under the present circumstances Shomock will get such a hearing from the Army. Indeed, the contrary would appear to be the case. In response to repeated inquiries made by Assistant United States Attorney Daley at the suggestions of this court conveyed through the Clerk, a letter dated Febru-

12. See Mr. Justice Douglas' dissent in *Ehlert*, 402 U.S. at 108, 91 S.Ct. 1319.

13. Chief Judge Seitz's opinion was not overruled on the point that the Local Board should state its reasons for denying the inductee conscientious-objector status. In fact, his position was reiterated in Fein v. Selective Service Local No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). Justice Blackmun's opinion, *Fein*, at 366, 92 S.Ct. at 1065.

14. No. 70–91, 2/23/72.

15. Shomock's Local Board did not have the benefit of Welsh v. United States, *supra*, to guide its recognition of a valid prima facie conscientious objector claim even if the Board at Shomock's request had in fact attempted to determine the merits of it. See United States v. Neamand, 452 F.2d 25 (3 Cir. 1971).

16. *Scott* has been held to apply retroactively. United States v. Crownfield, 439 F.2d 839 (3 Cir. 1971).

ary 9, 1972, set out below,[17] was received from General Counsel Robert W. Berry, of the Department of the Army.

An examination of this letter and in particular its next to last two paragraphs raises doubt as to whether or not Shomock would receive a hearing in the Army on his conscientious-objector status, albeit the record of the paragraphs referred to states to the contrary, for it would appear that the General Counsel has misread the regulation applicable on May 8, 1969, the date on which Shomock refused induction. See United States v. Lopez, 451 F.2d 1311 (9 Cir. 1971). At that time AR 635–20 ¶ 3(b) read as follows: " '. . . [r]equest for discharge after entering military service will not be favorably considered when—(1) based solely on conscientious objection which existed but which was not claimed *prior to induction,* enlistment, or entry on active duty or active duty for training.' (Emphasis supplied.)" It will be borne in mind that Shomock made no claim for conscientious objector status prior to receiving notice of induction. Only since August 15, 1970 has the Army regulation referred to above been altered to read: ". . . prior to *notice* of induction. . . ." It would seem, therefore, that Shomock's request for a hear-

17. DEPARTMENT OF THE ARMY, Office of the General Counsel, Washington, D.C. 20310.

RECEIVED
FEB 14 10:42 AM '72
U.S. Attorney's Office
Pittsburgh, Pa.

RECEIVED
FEB 15 1972    9 Feb 1972
Thomas A. Daley, Esquire
Assistant U. S. Attorney
Western District of Pennsylvania
633 U.S. Post Office & Courthouse
Pittsburgh, Pennsylvania 15219
Dear Mr. Daley:

This is in response to your letter of December 29, 1971 addressed to the Solicitor General requesting a statement similar to the one provided in the case of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

In preparing this reply, I have reviewed the material submitted with your letter: appellant's brief, government's brief, appellant's reply brief, letter of appellant's counsel to the court dated November 23, 1971, and your letter to the court dated December 6, 1971.

The material that you provided me presents two interpretations of the draft board's handling of appellant's request for classification as a conscientious objector. The appellant alleges that his 'claim for conscientious objection was 'denied by the Selective Service System prior to induction' on the merits. . . .' (Letter by Mr. Michael P. Malakoff, dated November 23, 1971, to the Clerk, United States Court of Appeals for the Third Circuit.) The Government, on the other hand, alleges that 'the Local Board did not *deny* Shomock's post-induction order claim of conscientious objection, but rather declined to reopen his classification.'

(Letter by Mr. Thomas A. Daley, dated December 6, 1971, to the Clerk, United States Court of Appeals for the Third Circuit.) I, of course, am in no position to address how appellant's claim for classification as a conscientious objector was actually handled by his local draft board. Therefore, I will outline what the Army would have done under both versions of how his claim was handled.

If the appellant had entered the Army in May 1969 under circumstances where the Selective Service System actually considered and denied his conscientious objector claim on the merits, he would not have been entitled to an in-service determination on the merits of his conscientious objector claim.

If the appellant had entered the Army in May 1969 under circumstances where his local draft board merely refused to reopen his classification because his asserted-views crystallized subsequent to the receipt of his induction notice, in the view of the Department of the Army personnel responsible for administering the conscientious objector claims of in-service members, he would have been entitled under Army policy to an in-service determination on the merits of his conscientious objector claim. If it is assumed that Army policy would have been followed in appellant's case, his application would have been processed in accordance with the provisions of AR 635–20 with a final determination made on the merits of his claim by the Department of the Army 1–0 Conscientious Objector Review Board.

I trust that this information will satisfy the request of the Court of Appeals.

Sincerely,
[signed] Robert W. Berry
Robert W. Berry
General Counsel

ing under the regulation existing at the time of his scheduled induction would not have been favorably considered. United States v. Lopez, *supra;* Baker v. Laird, 316 F.Supp. 1, 3–4 (N.D.Cal.1970); Aquilino v. Laird, id. 1053, at 1054 (W.D. Tex.1970); United States ex rel. Healy v. Beatty, 424 F.2d 299, 302 (5 Cir. 1970); Bates v. Commander, First Coast Guard District, 413 F.2d 475, 478 (1 Cir. 1969). See 402 U.S. at 106, 91 S.Ct. 1319.

As we have said, the Local Board did not give any reasons for denying Shomock's claim for conscientious-objector status. Since the Board stated no reasons it could not be clear to Shomock, nor is it presently clear to us, whether the Board's refusal was based on lack of jurisdiction or some other technical reason or was a decision based on the merits of Shomock's claim. The failure to inform Shomock as to the basis of the denial of conscientious-objector status was impermissible. See *Scott, supra.* Under the circumstances at bar, presently to punish Shomock's refusal of induction would be inequitable and a result which we cannot countenance. We, therefore, will reverse the judgment of conviction. The Local Board is, of course, free properly to reprocess Shomock for induction.

ADAMS, Circuit Judge (concurring).

I concur in the result reached by the majority in this case. However, because I reach that result by a somewhat different process of reasoning, it is appropriate to set forth my views in a separate statement.

Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), holds that a conviction of a late crystallizing conscientious objector who refuses induction comports with due process only if he either received a fair hearing on the merits of his claim from his local board or would have received such a hearing in the Army had he submitted to induction. The Supreme Court affirmed

Ehlert's conviction on the ground that the pertinent Army Regulations in effect at the time Ehlert refused induction had been construed by the Army to provide him with the required hearing after induction but before commencement of combatant training or duty. The Court stated:

"We are assured, however, by a letter included in the briefs in this case from the General Counsel of the Department of the Army to the Department of Justice, that present practice allows presentation of such [C.O.] claims, and that there thus exists no possibility that late crystallizers will find themselves without a forum in which to press their claims. Our conclusion in this case is based upon that assurance. For if, contrary to that assurance, a situation should arise in which neither the local board nor the military had made available a full opportunity to present a prima facie conscientious objection claim for determination under established criteria, see Welsh v. United States [398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970)] *supra*, a wholly different case would be presented." 402 U.S. at 107, 91 S.Ct. at 1324 (footnotes omitted).

Following the oral argument in this case, we sought to obtain from the Army a statement whether, on the facts of the case, had Shomock submitted to induction, the Army would have granted him a *conscientious objector* hearing at the time he was scheduled for induction. The responses to our inquiries, however, have not resolved that question. In reply to the letters submitted to us by the Army, Shomock has referred to us pleadings submitted by the Government in the somewhat analogous case of Baker v. Laird, 316 F.Supp. 1 (N.D.Calif.1970). There, the Army took the position that Baker was not entitled to a hearing on his conscientious objection claim because he submitted to his local board, after he received his induction notice, a claim based on conscientious objection, which

was denied by the local board.[1] This, according to the Army, indicated that Baker's conscientious objection beliefs "became fixed prior to his entry into the active military service." Because the facts giving rise to the Army's determination in *Baker* transpired during substantially the same time period as the events in Shomock's case, it is not unreasonable to conclude, nor is it inconsistent with the letters we received from the Army, that the Army would have taken the same position with regard to Shomock.

Therefore, Shomock's case is distinguishable from *Ehlert* because Ehlert, had he submitted to induction, would have been granted a hearing on the merits by the Army, whereas Shomock, if he had submitted to induction, would not have received a hearing to determine the validity of his conscientious objection claim.

The question then remains: Did Shomock receive a hearing on the merits of his conscientious objector claim from his local board? In arguing that the local board did not err in failing to state reasons for denying Shomock's claim, as required by United States v. Crownfield, 439 F.2d 839 (3d Cir. 1971); Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970), the Government takes the position that the board never reached the merits, but decided only that Shomock had failed to present to the local board a prima facie case, a situation not requiring a statement of reasons by the local board. In fact, the Government takes the position that "there was no *de facto* reopening."

But we cannot determine from our own independent examination of the record—primarily because no statement of reasons was ever given by the local board—whether or not the courtesy interview granted Shomock by his local board amounted to a full consideration of his claim on the merits.

Thus, while it would appear that Shomock never received from his local board, or could have received from the Army had he allowed himself to be inducted, the fair hearing contemplated by Ehlert, it is possible that such a hearing was actually held by the board. If Shomock never received the hearing to which he was entitled, then his conviction fails to comply with due process. *Cf.* Ehlert v. United States, *supra.* However, if he did receive such a hearing, then it would appear that Shomock's induction notice was invalid for failure to state the reasons for denying his application. *See* United States v. Crownfield, *supra. See also,* United States ex rel. Bent v. Laird, 453 F.2d 625 (3d Cir. 1971).

Accordingly, the judgment of conviction should be reversed. The local board is, of course free to reprocess Shomock for induction.

---

1. Here Shomock submitted to his local board, after he received his induction notice, a claim based on conscientious objection, which was denied by the board.