**UNITED STATES of America**

v.

**Joel ZISKOWSKI, Appellant.**

**No. 72–1206.**

United States Court of Appeals,
Third Circuit.

Argued June 15, 1972.

Decided Aug. 14, 1972.

John D. Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

Walter S. Batty, Jr., Asst. U. S. Atty., Carl J. Melone, U. S. Atty., Philadelphia, Pa., for appellee.

Before STALEY, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal challenges a criminal conviction (the district court judgment and commitment is dated January 25, 1972), after trial to the court, for refusal to submit to induction in accordance with a Local Board order as required by the Military Selective Service Act of 1967, as amended, and the rules and regulations made pursuant thereto, in violation of 50 U.S.C. App. § 462.

After the registrant had received an order to report for induction on November 17, 1969,[1] which was mailed on October 23, 1969, he filed an application on Form 150 for classification as a conscientious objector (I–O) in early February 1970, alleging, inter alia, that consideration of his imminent induction in November 1969 made him realize that "I couldn't bear arms against another person." His Form 150, as supplemented by his supporting letters, made out a prima facie case for a I–O classification. See Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). After a nonstatutory interview was granted to Ziskowski by the Local Board on February 5, 1970, at which he "advised his feelings crystallized when he received the induction order,"[2] the Board declined to reopen the case and sent him a letter dated 5 February 1970 stating, inter alia:

"It is the determination of the board that there has been no change in your status resulting from circumstances over which you had no control. Your classification has not been reopened."[3]

---

1. This induction date was postponed several times.

2. This Form 150 also alleged:
   "I have expressed the view of not killing people to many friends and relatives. I expressed my views orally since Nov. 17, 1969 to my mother, and friends Ken Marmer, Carol Davis and others the night after I returned from the induction center. Previous to the induction date I never expressed any views one way or the other regarding to the 10 status, because I never thought about it very seriously until the actual situation came up that I was to be called into the Armed Service and would be required to bear arms and help to kill people. This didn't hit until the day I received my induction notice."
   There is also in the file a letter dated February 3, 1970, from one of the registrant's friends stating:
   "Ever since Nov. 17, 1969, Joel Ziskowski has told me of his beliefs concerning participation in the Armed Services. He feels that the commandment 'Thou shalt not kill' should not be disobeyed in mans society even in wartime. He feels that it is against all his religious beliefs to take a human life or help to do so."

3. Subsequently a second interview was granted to registrant in March 1970 and the same decision not to reopen the case was made by the Local Board, which sent him a letter of March 13, 1970, containing similar language. Also, there is a notation in the Minutes of Action taken by the Selective Service Authorities under date of April 14, 1971, stating that the reason of the Board Members for refusing to reopen registrant's 13 March 1970 classification is "They found no change in circumstances over which he had no control. . . ."

32 C.F.R. § 1625.2, governing the reopening of a registrant's classification after the mailing of an Order to Report for Induction, provides that such reopening shall not occur "unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." The language used by the Board in refusing to reopen Ziskowski's classification is consistent with at least the following reasons: [4]

1. A Board finding that the registrant's conscientious objector beliefs were not sincere either before or after receipt of his notice of induction on October 23, 1969,[5] so that there was no change in his status since he was not entitled to a conscientious objector classification in either period.

2. A Board finding that the registrant's conscientious objector beliefs were sincere both before and after receipt of his notice of induction on October 23, 1969,[6] so that there was no change in his status requiring a reopening of his classification.

3. A Board finding that the registrant's conscientious objector beliefs, even if they were sincere and had crystallized after receipt of the Order to Report for Induction, were not "by reason of religious training" (See 50 U.S.C. App. § 456(j)),[7] so that there was no change in his status since he was not entitled to a conscientious objector classification in either period.

4. A Board determination that even if the registrant might be entitled to a conscientious objector classification because his conscientious

4. See Scott v. Commanding Officer, 431 F.2d 1132, 1136 (3d Cir. 1970); Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970).

5. In the Summary of Information Furnished by Registrant (Form SSSP–3563–A) prepared by the Board in connection with the February 5, 1970, personal interview (page 63 of Exhibit G–1), the following statements appear:

"Was asked when did he decide he was a C.O. Registrant advised his feeling crystalized when he received the induction order. Pointed out to him that he was first ordered for induction in 1968. Did not request 150 when first ordered for Apr. 1968 Call nor for the Nov. 1969 Call. . . . Acknowledged that he never did anything about his feelings until now."

6. There was evidence in the Local Board file, contained in three letters supporting his request for conscientious objector classification from his family and friends, stating that he was conscientiously opposed to war in any form when he was in high school, several months before October and November 1969 when he received the notice of induction order requiring him to report for induction on November 17, 1969.

Further, the above-mentioned file contained statements of registrant that he had not applied for a I-O status before receipt of the notice of induction in the fall of 1969 "because I wasn't sure of what to do. I didn't feel that I could receive an I.O. classification" (Summary of 5 February 1970 interview at 40a). On a rider to Question 1 of Form 150, he said:

"I was ignorant of the law regarding 10 status and assumed that to be classified you must be a Quaker or Meninite [sic] and all other religions or religious beliefs were not considered for reclassification."

7. The following language appears in Summary of Information Furnished by Registrant" (Form SSSP–3563–A) covering his February interview (page 63 of Exhibit G–1): "But you have not attended Sunday School or church in recent years. A. not regularly. Is not acquainted with the present clergy." In registrant's written summary of the interview, which he sent to the Board, the following appears as the first questions asked him (page 65 of Exhibit G–1):

"Do you attend church regularly. No I haven't attended in almost 8 years.

"Does your minister know the way you feel? Could he write a letter of support of your claim?

"He was transferred about 8 years ago. I don't know where he is right now."

We note that Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), was decided in June 1970, more than three months after the final board action of March 1970. For the effect of *Welsh* on the review of conscientious objector claims, see, e. g., Aquilino v. Laird, 316 F.Supp. 1053 (W.D.Tex.1970), on reconsideration after remand, 429 F.2d 573 (5th Cir. 1970).

objector beliefs were sincere and "by reason of religious training" and had crystallized after October 23, 1969, the registrant was not entitled to a reopening of his classification because such crystallization was not "a circumstance over which the registrant had no control" within the meaning of 32 C.F.R. § 1625.2.[8]

A basic problem with the language used by the Board in refusing to reopen the registrant's classification is, therefore, that one cannot tell from this language why the Board took the action that it did. In Scott v. Commanding Officer, 431 F.2d 1132, 1137–1138 (3d Cir. 1970), this court was confronted with a similar problem, which it explained in the following terms:

> "Petitioner's Form 150 was explicit in its statement of his beliefs. Certainly, the beliefs outlined, if sincerely held, would qualify him as a conscientious objector. The only possible grounds for rejecting his claim, then, would be finding that the beliefs are not sincerely held or that they did not undergo a material change or crystallize after the induction order.
>
> "There is nothing in the petitioner's file to indicate that his asserted beliefs are not sincerely held, and the board made no finding of insincerity.
> . . .

> \* \* \* \* \* \*

"Why then did the board refuse to reopen his classification? We can only speculate. Perhaps, petitioner was evasive during his courtesy interview causing the board to conclude that he was insincere in his beliefs. Perhaps, the board believed him to be a sincere conscientious objector but disbelieved his account of post-induction-order crystallization. On the other hand, for all that we can tell from petitioner's file the board was completely impressed with his credibility on all issues but denied his claim because of

the erroneous view that his beliefs were not sufficiently 'religious' (see United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970)) or that beliefs are always within one's control for purposes of the reopening regulation. We simply do not know."

In Scott we concluded by holding that:

> "Since petitioner's file contains no statement of the reasons for the board's refusal to reopen his classification, we have no choice but to hold his induction order invalid and direct that the writ be issued." Id.[9]

Similarly, in United States v. Neamand, 452 F.2d 25, 30 (3d Cir. 1971), this court said in reversing a conviction for refusing to submit to induction, where the local board had not indicated its reasons for refusing to reopen his classification in view of his submission of a conscientious objector claim:

> " . . . [W]e just do not know why the board rejected this registrant's claim; on the basis of the testimony adduced at trial and the selective service file we do not know whether the board relied on an erroneous ground. Accordingly, we are persuaded that if the reasons underlying the Scott rule are valid and respectable, their application is justified and warranted here; findings by the board should have been mandated under the circumstances which underlie this appeal.

> \* \* \* \* \* \*

> . . . We hold merely that, under the circumstances of this case, we cannot countenance a conviction which springs from bare administrative action appearing so perfunctory that reasonable review of its legitimacy is impossible."

We have concluded that the bare statement given by the Board in denying reopening in the instant case, like the

---

8. See Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

9. We held that Scott has retroactive application in United States v. Crownfield, 439 F.2d 839 (3d Cir. 1971).

statements involved in *Scott* and *Neamand, supra,* is inadequate to permit proper review of the Board's actions in refusing to find a change in circumstances over which the registrant had no control. We therefore reverse the conviction, which will permit further proceedings by the Selective Service System consistent with this opinion.

We believe that the Government's reliance on Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), as making unnecessary a statement of reasons for the Board's refusal to reopen in the instant case is misplaced. In *Ehlert* the Court had before it a decision of the petitioner's local board not to reopen his classification because "the crystallization of his conscientious objection did not constitute the 'change in the registrant's status resulting from circumstances over which the registrant had no control.'" 402 U.S. at 100, 91 S.Ct. at 1321. Thus, the local board had rather clearly made finding number 4 of the four possible findings set forth above at pages 482–483.[10] The Court held that in view of the assurance by the General Counsel of the Department of the Army that a "late crystallizer" such as Ehlert would have received an opportunity to file for conscientious objector status after entry into the Army, it was reasonable to adopt the Government's administrative interpretation of 32 C.F.R. § 1625.2, employed by the local board in Ehlert's case, that the late crystallization of conscientious objector beliefs did not constitute a circumstance "over which the registrant had no control." However, the Court

did not hold in *Ehlert* that a conviction for refusing induction may be sustained where, as in the instant case, the Local Board has failed to sufficiently indicate the reasons for its refusal to reopen a classification where a prima facie case for such reopening has been made. As indicated above, in Scott v. Commanding Officer, *supra,* this court indicated that such a conviction could not be sustained. That the Court did not intend to reject this holding in *Scott* is indicated by its subsequent opinion in Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). In this opinion the Court appeared to accept as law the Government's concession that the failure of the local board to articulate in writing its reasons for a denial of a prima facie case of a conscientious objector classification constituted "a fatal procedural flaw," citing among other cases this court's opinion in *Scott.* See 405 U.S. at 380–381, 92 S.Ct. 1062 and n. 7.

Indeed, the reasoning of the Court in *Ehlert* lends substantial support to the result which we reach in the instant case. One of the primary concerns of the Court in *Ehlert* was that there not exist a "no man's land" in which the registrant whose conscientious objector views have crystallized after receipt of his notice of induction is denied an opportunity to present his claim to either the Selective Service System or the Army. The Court noted that:

"It would be wholly arbitrary to deny the late crystallizer a full opportunity to obtain a determination on the merits of his claim to exemption from

---

10. That is, Ehlert's local board determined that even if Ehlert were a late crystallizer entitled to a conscientious objector classification, this late crystallization of his beliefs did not result from "circumstances over which the registrant had no control," so that no reopening of his classification was possible. See Ehlert v. United States, 422 F.2d 332, 333 (9th Cir. 1970), aff'd, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971):

"In refusing to reopen his classification, the local board advised appellant that its action was based upon its de-

termination that 'the information submitted on SSS form 150 was not a change in your status which was beyond your control.'"

Additional support for this interpretation of the local board's actions in *Ehlert* is the apparent fact that Ehlert's request for a reopening of his classification was rejected by return mail without any grant of a courtesy interview by the local board. Compare the reaction of Ziskowski's Local Board in scheduling two personal appearances for Ziskowski, as set forth at pp. 481–482 and n. 3, *supra.*

combatant training and service just because his conscientious scruples took shape during a brief period in legal limbo." 402 U.S. at 104, 91 S.Ct. at 1323.

In *Ehlert's* case the Court found that there would have been no such "no man's land" in view of the assurance by the General Counsel of the Army to this effect, notwithstanding the language in AR 630–20, ¶¶ 3a, b(1), which "seem[ed] to look the other way." 402 U.S. 106, 91 S.Ct. 1324. However, another paragraph of AR 630–20, ¶ 3 not cited by the Court in *Ehlert*, provides that:

"b. . . . Requests for discharge after entering military service will not be favorably considered when—

\* \* \* \* \* \*

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction."

As indicated above, the language used by the Board in refusing to reopen Ziskowski's classification might have indicated a denial on the merits of his conscientious objection claim.[11] Thus, even assuming that at the time that Ziskowski would have been inducted the Army would have construed the above-quoted AR 630–20, ¶ 3b(2), to bar only those conscientious objector claims that had been denied by the Selective Service System on the merits (not a necessary assumption in view of the rather ambiguous language of the regulation[12]), the Army might reasonably have construed the Board's action as precluding consideration of Ziskowski's conscientious objection claim in the Army.[13] See United States v. Shomock, 462 F.2d 338 at 344–346 and n. 17 (3d Cir., filed June 20, 1972); Baker v. Laird, 316 F.Supp. 1 (N.D.Cal.1970).[14] The result would have been precisely the type of "no man's land" that the Court declared in *Ehlert* would not be permitted to exist. See 402 U.S. at 104, 107, 91 S.Ct. 1319.

For the foregoing reasons, the judgment of conviction and sentence in the instant case will be reversed, without prejudice to further proceedings by the Selective Service System consistent with this opinion.

．

ADAMS, Circuit Judge (concurring).

I concur in the result reached here for the reasons set forth in United States v. Shomock, 462 F.2d 338 (3d Cir., June 20, 1972) (see particularly at pp. 346–347).

---

11. See the possibilities listed in paragraphs 1 and 3 on pages 482–483.

12. On August 20, 1971, approximately 17 months after Ziskowski was finally ordered to report for induction and four months after the Supreme Court's decision in *Ehlert*, a Department of Defense Directive (No. 1300.6, IV) interpreting AR 635–20, ¶ 3(b), was amended to specifically provide, *inter alia*, that the local board's denial must be "on the merits" for such denial to render a member of the Armed Services ineligible for classification as a conscientious objector. See DOD Directive No. 1300.6, IV, A.1.(b)(2) (Aug. 20, 1971).

13. This interpretation of the Board's action would have been particularly reasonable in view of the fact that the Board granted Ziskowski two personal interviews before finally ordering him to report for induction. See pp. 481–482 and n. 3, *supra*. Compare the treatment afforded Ehlert by his local board, n. 10, *supra*.

14. *Cf.* Gruca v. Secretary of Army, 436 F.2d 239, 241 n. 1 (D.C.Cir. 1970); Bates v. Commander, First Coast Guard District, 413 F.2d 475, 478 (1st Cir. 1969); Aquilino v. Laird, 316 F.Supp. 1053, 1054 (W.D.Tex.1970), after remand, 429 F.2d 573 (5th Cir. 1970); United States ex rel. Barr v. Resor, 309 F.Supp. 917 (D.D.C.1970).