**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**LUTCHMAN MAHABIR, Defendant**

Crim. No. 119-1972

District Court of the Virgin Islands

Div. of St. Thomas and St. John

May 23, 1973

UNITED STATES ATTORNEY, *for plaintiff*

GRUNERT, STOUT, HYMES & MAYER (JAMES L. HYMES, of counsel), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

OPINION

Defendant has moved the court to dismiss the information here filed against him. He stands charged in that information with willful and knowing failure or neglect to perform a duty required of him under the Universal

Military Training and Service Act (Military Selective Service Act of 1967, 50 U.S.C. App. § 462) and the pertinent rules and regulations thereto, in that he failed to comply with an order of his local board to report for and submit to induction into the Armed Forces of the United States. There is no factual dispute in this cause and the situation may be summarized as follows:

Lutchman Mahabir registered with the Selective Service System on June 10, 1970, in Miami Florida, his local board being No. 156. At the time he filled out his questionnaire, Mahabir made no claim of being a conscientious objector. On August 3, 1970, defendant was classified 1-A. His local board, on August 19, of the same year ordered him to report for pre-induction examination on September 14, 1970. By this time, Mahabir was residing in the Virgin Islands. Therefore, on August 25, he appeared at local board No. 54-1 in St. Thomas, Virgin Islands and asked that his examination be transferred to the Virgin Islands. He executed and filed the required form. The Florida board completed the transfer action, local board No. 54-1 having approved the request. The St. Thomas local board, on September 14, then ordered Mahabir to report to it on September 24 for examination. Defendant reported for pre-induction physical as ordered, was examined and found to be acceptable. A statement of acceptability was then forwarded to the Miami local board, and that board, on November 12, 1970, ordered defendant to report for induction on November 24, 1970. As is customary, the letter ordering Mahabir to report indicated that if it proved a financial hardship to him to report for induction in Miami, he should promptly present himself to the nearest local board and request a transfer. Mahabir complied with this instruction on November 17, and once again the transfer was approved. The local board in St. Thomas, by letter of December 3, 1970, directed Mahabir to report for induction on December 17.

On December 11, defendant wrote to his local board in Miami requesting cancellation of his order for induction as he was then, for the first time, claiming conscientious objector status. The letter was accompanied by the customary SS Form 150—Special Form For Conscientious Objector. It appears that on the date of writing, defendant delivered a duplicate copy of that form to local board 54-1 in St. Thomas. Local board 156 received the letter and the Form 150 on December 15, 1970. On the same day the Executive Secretary of Board 156 wrote to defendant advising him that the board was not scheduled to convene in regular meeting prior to his induction date and therefore would be unable to review his file with the completed Form 150. Moreover, the board informed Mahabir that the state headquarters had turned down its request for authorization to cancel or postpone his induction. The letter concluded by expressing the expectation that as a consequence of the state headquarter's action, defendant would report for induction as ordered. However, on December 16, 1970, on application to this court, defendant obtained a temporary restraining order enjoining the local board from proceeding with the induction process until his application for conscientious objector status could be considered, and on the following day, the Acting State Director of the State of Florida wrote to defendant's board granting authority to postpone his induction 30 days, in order to permit the board to consider his SS Form 150.

On December 23, local board 156 received all papers constituting defendant's selective service file which had been returned to that board by the St. Thomas local authority.

It should be mentioned that in support of his claim for conscientious objector status, defendant submitted several letters to his local board, some from relatives, all members of the clergy in various Christian denominations, and one

from the assistant vice president of the Bank of America, by which organization he was then employed.

Local board 156 met on January 11, 1971, at which time it allegedly reviewed the "complete selective service file, including the current special form for conscientious objector."

On January 20, the board wrote to defendant saying in pertinent part,

Your Local Board 156 did not find evidence in the file that, in their opinion, would give them a proper basis to reopen your classification.

Further, review of the file failed to disclose any change in your status that, in the opinion of the members of the Board, resulted from circumstances over which you had no control, which would allow consideration of a reopening while under an Induction Order.

Even if the information submitted by you were found to be true, it is the opinion of your Local Board that such information would not justify a change in your classification since your claim lacks sincerity.

The letter set out no more of the board's thought processes. The letter failed to state the basis on which the board concluded that defendant's claim was insincere beyond what I have quoted above. The other portions of the letter did no more than advise defendant that the board had met and reviewed his file and that for the reasons contained in the quoted portions, it declined to reopen defendant's classification and reclassify him. Once again the board pointed out to defendant that since he was under an order of induction, it was expected that he would comply with such order. Defendant, thereupon, on January 29, 1971, requested anew that his case be transferred for induction to the Virgin Islands and, as before, his request was approved.

On March 3, local board 54-1 ordered the defendant to report for induction on March 18, 1971. The appropriate

form in defendant's file indicates that he failed to report. It is for this failure that he is before the court.

Defendant contends that the information should be dismissed because his induction order, upon which the charge is predicated, was invalid, by reason of the board's refusal to reopen his classification, and its failure to state the reason therefor.

The reopening of selective service classifications is controlled by 32 C.F.R. § 1625.2, which provides in part:

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant . . . if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; . . . provided . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

Defendant seeks to rest his case squarely on Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1970). Like Mahabir, Scott did not claim conscientious objection to military service until after receiving an order to report for induction. Similarly, Scott's request that the board reopen his classification was denied. The board's letter to Scott advised that, "It was the unanimous opinion of the board that the new information did not warrant reopening of your classification." Unlike Mahabir, Scott submitted to induction, but he immediately filed for a writ of habeas corpus, alleging that he had been illegally inducted. On appeal, the Third Circuit held that a change in belief can constitute a change in status, and a material change in belief can be due to circumstances beyond a registrant's control, entitling him to be considered for reopening under 32 C.F.R. § 1625.2, if his application presents a prima

facie claim to conscientious objector status. The court went on to hold that where a prima facie case is stated, "it is essential to the validity of an order to report that the board states its basis of decision and the reasons therefor, i.e., whether it has found the registrant incredible, or insincere or of bad faith and why" (at 1137).

In Ehlert v. U.S., 402 U.S. 99 (1971), the Supreme Court reviewed a similar post-induction notice claim of conscientious objection, and, faced with a conflict among the circuits, resolved the question of whether a change in beliefs may constitute a change in status beyond the registrant's control, against the Scott rule. Ehlert was notified that his board had declined to reopen, "because the crystallization of his conscientious objection did not constitute the 'change in the registrant's status resulting from circumstances over which the registrant had no control' required for post-induction notice reopening . . ." (at 100). The court concluded that this categorization was valid, "provided that no inductee could be ordered to combatant training or service before a prompt, fair, and proper in-service determination of his claim" (at 101). Since Ehlert, the Third Circuit has had occasion to reconsider the Scott holdings, and it has emphasized that Scott was only partially vitiated by Ehlert. The requirement enunciated in Scott that a local board articulate its reasons for refusing to reopen a classification is still vital, U.S. v. Shomock, 462 F.2d 338 (3 Cir. 1972); Fein v. Sel. Serv. System, 405 U.S. 365 (1972).

In a case of more recent vintage, the Third Circuit reversed a district court conviction on the following facts: The registrant filed Form 150, supplemented by supporting letters, after receiving an order to report for induction. The board declined to reopen, stating:

It is the determination of the board that there has been no change in your status resulting from circumstances over which you had no control.

With respect to the board's letter, the court observed,

A basic problem with the language used by the Board in refusing to reopen the registrant's classification is . . . that one cannot tell from this language why the Board took the action it did,

and the court concluded that, "the bare statement given by the Board" was "inadequate to permit proper review of the Board's actions in refusing to find a change in circumstances over which the registrant had no control." U.S. v. Ziskowski, 465 F.2d 480, 484 (3 Cir. 1972). In that case the Ehlert decision was distinguished as relating to a local board determination "that even if Ehlert were a late crystallizer entitled to a conscientious objector classification, this late crystallization of his beliefs did not result from 'circumstances over which the registrant had no control'" (484 n. 10).

The summary of facts in Ziskowski tends to show that there was evidence in the registrant's file indicating that his objection to war in any form pre-dated the induction order (465 F.2d at 482, n. 6), but he informed the Board that he "never thought about it very seriously until the actual situation came up that [he] was to be called into the Armed Services and would be required to bear arms and help to kill people" (at 481, n. 2).

Mahabir's file, too, contains letters evincing pacifism which may have existed from as early as his childhood (e.g., Plaintiff's Ex. 11)́, but in his cover letter to local board 156, he chronicles the "crystallization" of his conscientious objection from the receipt of the induction order.

Although I have held the beliefs which form the basis of my conscientious objector claim for the majority of my adult life, I have never thought of them in connection with the Selective Service before for two reasons. First, in my home country of Trinidad there is no draft system. Therefore the problem of a conflict between my beliefs and the military never arose. Second, it was not until I was actually faced with an order to report for induction that

539

I had to, in fact, deal with this conflict. I have made my decision knowing that if I did not now resolve this conflict within myself, I would be drafted on December 17, 1970 (Plaintiff's Ex. 14).

Local board 156, like the board in Ziskowski, stated that it declined to reopen because its review of Mahabir's file failed to disclose a change of status, which in the board's opinion, resulted from circumstances beyond his control. In Ziskowski, this "bare statement", standing alone, was held insufficient explanation to permit proper review. I detect no basis upon which to distinguish that authority.

The board's second basis for refusing to reopen is similarly flawed. No reason is stated for the board's finding of insincerity, and, indeed, the stated basis is self-obfuscating. To say that even if the submitted information were true, it would not justify a change in classification because the claim lacks sincerity, is to pose a riddle. The submitted information was specifically directed to the registrant's credibility in his claim. Moreover, this reference to sincerity injects into the case the potential for construing the board's decision as one "on the merits" thus precluding in-service consideration of Mahabir's claim. It was precisely this possibility which was confronted and found unacceptable in Ziskowski (at 485).

I am constrained to adhere to the views of the Third Circuit as expressed in Ziskowski, and on that authority, will grant defendant's motion to dismiss the information.